IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

– – – – – – – – – – – – – – – – – – – – – – – x

Compression Labs, Incorporated,                     :
                                                    :
                        Plaintiff,                  :        C.A. No. 2:04CV-158 DF
                                                    :
            v.                                      :
                                                    :
1.   Agfa Corporation,                              :
2.   Apple Computer, Incorporated,                  :
3.   Axis Communications, Incorporated,             :
4.   Canon USA, Incorporated,                       :
5.   Concord Camera Corporation,                    :
6.   Creative Labs, Incorporated,                   :
7.   Eastman Kodak Company,                         :
8.   Fuji Photo Film U.S.A.,                        :
9.   Fujitsu Computer Products of America, Inc.     :
10.  Gateway, Incorporated,                         :
11.  Hewlett-Packard Company,                       :
12.  JASC Software,                                 :
13.  JVC Americas Corporation,                      :
14.  Kyocera Wireless Corporation,                  :
15.  Macromedia, Incorporated,                      :
16.  Matsushita Electric Corporation of America,    :
17.  Mitsubishi Digital Electronics                 :
     America, Incorporated,                         :
18.  Océ North America, Incorporated,               :
19.  Onkyo U.S.A. Corporation,                      :
20.  PalmOne, Incorporated,                         :
21.  Panasonic Communications                       :
     Corporation of America,                        :
22.  Panasonic Mobile Communications                :
     Development Corporation of USA,                 :
23.  Ricoh Corporation,                             :
24.  Riverdeep, Incorporated (d.b.a. Broderbund),   :
25.  Savin Corporation,                             :
26.  Thomson, Incorporated,                         :
27.  Xerox Corporation,                             :
                                                    :
                        Defendants.                 :
                                                    :

– – – – – – – – – – – – – – – – – – – – – – – x


MOTION TO DISMISS UNDER FED. R. CIV. P. 12(B)(7),
OR, IN THE ALTERNATIVE, MOTION TO  TRANSFER


280640.1

Dockets.Justia.com

Defendants[1] move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(7), and, in the alternative, to transfer pursuant to 28 U.S.C. § 1404(a).

## I.    INTRODUCTION

This case is improperly before this Court and should be dismissed or transferred.  In this action, Plaintiff Compression Labs, Inc. ("CLI"), has charged 27 defendants with infringement of U.S. Patent No. 4,698,672 ("the '672 Patent").  CLI has failed, however, to join an indispensable party, General Instrument Corporation ("GI"), as a plaintiff.  *See* Fed. R. Civ. P. 19.  GI is the owner of an undivided one-half interest in the '672 Patent and thus must be present to adjudicate this infringement claim.

To both remedy CLI's failure to name an indispensable party and vindicate their own rights, a declaratory judgment action was filed on July 2, 2004 by 24 of the Defendants, against all necessary parties in the United States District Court for the District of Delaware (the "Delaware DJ Action").  (Exhibit 1, Declaration of Joseph Casino ("Casino Decl.") at Att.  A.)  This Delaware DJ Action will adjudicate all claims affecting the interests of both CLI and GI as co-owners of the '672 Patent as well as several related claims.  By joining all necessary parties, the Delaware DJ Action is the first-filed action and takes priority over this Texas action.  As a result, the action before this Court should be dismissed or transferred to the District of Delaware.

---

[1] Of the 27 Defendants named in this action, all Defendants, except Onkyo U.S.A. Corporation, join in the motion to dismiss and in requesting transfer.  Defendant Onkyo U.S.A. Corporation has yet to be served in this action.  *See* Docket, June 7, 2004.  If the case is not dismissed, Concord Camera Corporation and Creative Labs, Inc. support transfer for the reasons stated herein and have filed a separate motion specifying certain additional grounds.

Even if this case is not dismissed, it should be transferred to the District of Delaware pursuant to 28 U.S.C. § 1404(a) for several reasons. CLI has no presence in this District; Defendants have only a nominal presence in this District; none of the parties' respective witnesses or documents are located in this District; and none of the critical events underlying this action took place in this District. In contrast, the District of Delaware on the other hand has the strong connections to this action that are lacking in the Eastern District of Texas. Delaware is where both co-owners of the '672 Patent in suit and 16 of the Defendants are incorporated and therefore reside. Delaware is also the location of the first-filed action with all of the necessary parties to adjudicate all of the parties' claims. These claims include not only the issues of non-infringement, invalidity and unenforceability of the '672 Patent, but also Defendants' claims for deceptive trade practices under Delaware law, patent misuse, equitable estoppel, fraud, antitrust and other claims all arising from CLI's baseless claims and unlawful conduct. Defendants also named Forgent Networks, Inc. ("Forgent"), also a Delaware corporation and the parent of CLI, as a defendant in the Delaware DJ Action. Forgent has participated, and continues to participate, in the acts giving rise to the unfair competition and related claims.

## II.    BACKGROUND

### A.    The Development Of The JPEG Standard

CLI recently commenced this action against 28 Defendants concurrently with a parallel second action against three additional Defendants.[2] Both Complaints allege that by implementing a digital still image compression standard that was jointly

---

[2] There are now 27 Defendants since on June 21, 2004, CLI amended its Complaint dropping Adobe, Inc. as a party.

promulgated by the International Standardization Organization ("ISO") and the International Electrotechnical Commission ("IEC"), all Defendants are infringing the '672 Patent. This standard, commonly referred to as the "JPEG Standard," was the result of a multi-year, international project that involved efforts by the world's experts in data compression to develop a common standard, free from proprietary claims, for use in a wide range of products, from digital still cameras to imaging software included on personal computers. (Casino Decl., Att. A at ¶ 3-4, 70-95.) The American National Standards Institute ("ANSI") was the coordinator of the U.S.-based efforts to develop the JPEG Standard. (*Id.*)

> B.  The Parties And Evidence To This Action
>     <u>All Reside Outside Of This District</u>

As is set forth in the Delaware Complaint (Casino Decl., Att. A at ¶¶ 70-102), CLI participated in developing the JPEG Standard through ANSI. A central issue to be adjudicated among the parties will be whether CLI's participation in the development of the JPEG Standard and its failure to disclose the '672 Patent during development amounts to, among other things, fraud, or unfair competition and estops CLI from now alleging infringement 12 years after the standard was adopted. *Id.* These claims will require extensive evidence regarding the development of the standard that is currently at ANSI Headquarters in Washington, D.C. and within the subpoena power of the Delaware Federal Court. *See* Fed. R. Civ. P. 45(b)(2)(providing that a subpoena may be served "at any place without the district that is within 100 miles of the place of the [trial]").

Plaintiff CLI is a Delaware corporation with "offices" located at 108 Wild Basin Drive, Austin, Texas.    (Texas Compl. at ¶ 2.)    Its parent company, Forgent, is headquartered at the same address.  (Casino Decl., Att. B.)  As of 1999, the extent of CLI's ongoing operations was "undetermined" and it was no longer listed in the telephone directory for Austin, Texas.  (Casino Decl. Att. C.)  From this, and from other public information—such as Forgent's 2003 Annual Report (Casino Decl., Att. D)—it appears that CLI has no continuing operations other than the licensing of the '672 Patent.  When CLI filed the '672 Patent (Casino Decl., Att. E.) and during the period relevant to the prior art (Casino Decl., Att. A at ¶¶  42-68), CLI was located in San Jose, California.

As to the Defendants in this action, 16 are incorporated in Delaware; and seven others are incorporated in other East Coast States.  Of the remaining Defendants, three are incorporated in California and one in Minnesota, with not even one Defendant being incorporated in Texas.  No Defendant is alleged to have a principal place of business in Texas let alone in this District.  (*See* Texas Amended Compl. at ¶¶  3-30.)

As to the three Defendants in the related second action, one is incorporated in Delaware, one is in New Jersey, and one in New York.  Again, none is incorporated in Texas.  The second action was separately filed by CLI on the same day as this action and is currently pending before Judge Ward.  There is a pending motion to transfer the second action to this Court.[3]

---

[3]  The defendants in the related action have filed a motion to transfer that case to this Court in order that these substantively identical cases proceed before the same judge, in the interests of justice, including avoiding duplicative litigation and ensuring judicial economy.  The defendants in that action have also filed a motion to dismiss, pursuant to Fed. R. Civ. P. 12(b)(7), based upon CLI's failure to join GI, the co-owner of the '672 Patent.

C.    Co-Ownership Of The '672 Patent

Although CLI has brought this action alone, it is in fact only a co-owner of the '672 Patent. GI obtained ownership of an undivided one-half interest in the '672 Patent. In June 1996, Charger Industries, Inc. ("Charger") entered into a License and Co-ownership Agreement with CLI. This Agreement assigned to Charger an undivided one-half interest in the '672 Patent, but restricted Charger's right to use the '672 Patent to a defined "Field of Use." (Casino Decl., Att. F.) CLI and Charger also executed a Patent Assignment, which was recorded in the U.S. Patent Office. The Patent Assignment states that Charger has "an undivided one-half interest" in the '672 Patent. (Casino Decl., Att. G.) Charger was later renamed Magnitude Compression Systems, Inc. ("Magnitude"). (Casino Decl., Att. J.) In July 1997, GI was split into three separately traded companies, one of which was NextLevel Systems, Inc. ("NextLevel"). At that time, Magnitude was a wholly-owned subsidiary of NextLevel. In February 1998, NextLevel was renamed GI. (Casino Decl., Att. K.)

The original 1996 Co-ownership Agreement acknowledges that GI is necessary to any enforcement action:

> **2.5 Infringement**. If either party learns of a third party infringement of a Jointly Owned Patent, that party shall promptly notify the other party of such fact. <u>The parties shall then mutually agree on how to proceed with an enforcement action</u>, including without limitation actions for past infringement of the Jointly Owned Patents occurring prior to the Effective Date. If the parties cannot agree, then if the infringement is limited to (1) Charger's Field of Use, Charger shall have the right to control the enforcement action, and (2) a field of use action other than the Charger Field of Use, CLI shall have the right to control the enforcement action. <u>The recovery from the enforcement action shall be split in proportion to the</u>

<u>parties' contribution to the enforcement action's costs
(including without limitation attorneys' fees). In the event
that a party hereto declines to participate in an
enforcement action, such party agrees, at the participating
party's expense, to join the action as a party plaintiff and
otherwise cooperate with the enforcement action in any
way reasonably requested by the participating party.</u>

(Casino Decl., Att. F; emphasis added.)

While there were two subsequent amendments to the June 1996 Agreement between Charger and CLI which further refined Charger's rights to practice and license the patent, those amendments did not change GI's status as an owner of an undivided one-half interest in the '672 Patent or its necessity as a party in this or any other claim for infringement. (Casino Decl., Att. H and I.)

Further, as pleaded in the Delaware DJ Complaint (Casino Decl., Att. A at ¶¶ 228-234), certain parties that have licenses with GI (or its parent Motorola, Inc.) have alleged that they have a license to the '672 Patent, including for use with the JPEG Standard.

GI has a continuing interest in enforcing the '672 Patent that is well documented. GI is one of the licensors in MPEG-LA, a group of companies that have pooled their patents applicable to the MPEG Standard, which relates to the compression of moving video. (Casino Decl., Att. L.) GI has licensed three patents through the MPEG-LA patent pool, including the '672 Patent. *Id.* GI apparently recognizes that Delaware is a convenient forum for enforcing its patent rights as it has previously filed suit for infringement of other patents against Compaq Computer Corporation (now merged into Hewlett-Packard Company, a Defendant here) in Delaware. (Casino Decl., Att. M.) Tellingly, GI may have recognized that it could not

assert its '672 Patent in its prior enforcement action in Delaware without CLI, instead deciding to assert its two other GI MPEG-LA patents against Compaq's MPEG-compliant products.

## Argument

CLI has brought this action in this District, without its co-owner GI, a necessary and indispensable party. Because of CLI's failure to include all necessary and indispensable parties, Defendants have brought the proper first-filed action in Delaware. Since none of the essential facts relating to the alleged infringement and enforceability of the '672 Patent arose in this District and none of the parties is incorporated or headquartered in this District, this case does not belong here. Accordingly, this action should be dismissed for failure to join GI or should be transferred to the District of Delaware where the first-filed DJ Action with all necessary parties is pending.

## III.    THIS ACTION SHOULD BE DISMISSED

### A.    Defendants' Motion To Dismiss Should Be Granted Because CLI Has Not Joined All Co-Owners Of The '672 Patent

As a matter of substantive patent law, "[a]n action for infringement must join as plaintiffs all co-owners." *Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1467 (Fed. Cir. 1998); *see also, e.g.*, *Int'l. Nutrition Co. v. Horphag Research Ltd.*, 257 F.3d 1324, 1331 (Fed. Cir. 2001). In this action for alleged infringement of the '672 Patent, CLI has failed to join the co-owner of the '672 Patent, GI. Accordingly, this action—brought by only one of the two co-owners of the '672 Patent—must be dismissed.

Pursuant to the Co-Ownership Agreement, CLI and GI each have "an undivided one-half (½) interest" in the '672 Patent and, therefore, are "joint owners" of that

patent.  (Casino Decl., Att. F § 2.1.)  The Patent Assignment, the only document ever filed with the Patent Office recording the assignment to GI/Charger, confirms that CLI and GI/Charger each have "an undivided one-half interest" in the '672 Patent.  (Casino Decl., Att. G.)  Neither the 1997 Amendment nor the 2002 Agreement modify Section 2.1 of the Co-Ownership Agreement in any way.  (*See* Casino Decl., Atts. H & I.)  Thus, CLI and GI are indisputably "joint owners" of the '672 Patent and this action cannot be maintained without GI.

Absent an agreement to the contrary, "one co-owner has the right to impede the other co-owner's ability to sue infringers by refusing to voluntarily join in such a suit." *Schering Corp. v. Roussel-UCLAF SA*, 104 F.3d 341, 345 (Fed. Cir. 1997)(citing *Willingham v. Lawton*, 555 F.2d 1340 (6th Cir. 1977)).  In other words, absent an agreement to the contrary, GI would be able to prevent CLI from bringing an infringement action by simply refusing to join in the action and GI would be well within its rights as a co-owner to do so.  *See Int'l Nutrition*, 257 F.3d at 1331.  To avoid that situation, co-owners may grant each other the unilateral right to sue, whereby each co-owner effectively waives the right to prevent a lawsuit.  *See Schering*, 104 F.3d at 345.

However, even if an agreement exists whereby co-owners grant each other the unilateral right to sue, such an agreement does not enable one co-owner to maintain an action without the other co-owner.  Rather, where such an agreement exists, each co-owner gives up the right to refuse to join in an infringement action and thereby preclude the other co-owner from bringing suit.  As the Federal Circuit explained in *Ethicon*:  "If, by agreement, a co-owner waives his right to refuse to join suit, his co-

owners may subsequently force him to join in a suit against infringers." 135 F.3d at 1468 n.9.

Here, CLI and GI have provided for the scenario in which only one co-owner wishes to sue for alleged infringement in Section 2.5 of the Co-Ownership Agreement:

> In the event that a party hereto declines to participate in an enforcement action, such party agrees, at the participating party's expense, to join the action as a party plaintiff and otherwise cooperate with the enforcement action in any way reasonably requested by the participating party.

(Casino Decl., Att. F at § 2.5.) This provision, however, does not enable CLI to sue for infringement without joining GI as a plaintiff. Indeed, it is a recognition of the rule that "[a]n action for infringement must join as plaintiffs all co-owners." *Ethicon*, 135 F.3d at 1467. Thus, because CLI has failed to join GI in this case, despite GI's agreement to join such an action as a party plaintiff, this case should be dismissed.

**B.** **The Complaint Should Be Dismissed Pursuant To Fed. R. Civ. P. 12(b)(7) For Failure To Join An Indispensable Party Under Fed. R. Civ. P. 19**

"The federal rules seek to bring all persons that may have an interest in the subject of an action together in one forum so that the lawsuit can be fairly and completely disposed of." *Pulitzer-Polster v. Pulitzer*, 784 F.2d 1305, 1308 (5th Cir. 1986)(citing Fed. R. Civ. P. 19advisory committee note). In accord with that goal, Rule 19 seeks to bring into a lawsuit all persons who ought to be there—"necessary parties"—by requiring joinder. *Id.* In the event that a necessary party cannot be joined, the Court must consider whether the necessary party is also an "indispensable party"—namely, a necessary party who cannot be joined and without whom the suit should be dismissed. *See* Fed. R. Civ. P. 12(b)(7).

Here, because GI is both a necessary and indispensable party under Fed. R. Civ.

P. 19, Defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(7) should be

granted.  *See, e.g., JLM Investments v. Acer Petroleum Corp.*, No. CIV. A. 7:00-CV-163-R,

2001 WL 376331, at *2 (N.D. Tex. Apr. 11, 2001); *Cooper v. Digital Processing Sys.,*

*Inc.*, 182 F.R.D. 242 (N.D. Ohio 1998), *aff'd,* 215 F.3d 1342 (Fed. Cir. 1999).

> 1.    GI is a necessary party

Under Fed. R. Civ. P. 19(a), a party is a necessary party if:

> (1) in the person's absence complete relief cannot be
> accorded among those already parties, <u>or</u> (2) the person
> claims an interest relating to the subject of the action and is
> so situated that the disposition of the action in the person's
> absence may (i) as a practical matter impair or impede the
> person's ability to protect that interest <u>or</u> (ii) leave any of
> the persons already parties subject to a substantial risk of
> incurring double, multiple, or otherwise inconsistent
> obligations by reason of the claimed interest.

Fed. R. Civ. P. 19(a)(emphasis added).  If any one of the three Rule 19(a) factors are

met, the party is a necessary party.  *See Cooper*, 182 F.R.D. at 246.  Here, GI satisfies

all three factors.

> i.    Fed. R. Civ. P. 19(a)(1)

GI is a necessary party under Rule 19(a)(1) because, in GI's absence, "complete

relief cannot be accorded among those already parties."  Without GI, Defendants

cannot obtain complete relief with respect to claims of infringement of the '672 Patent.

Because both CLI and GI have the right to sue for alleged infringement of the '672

Patent, Defendants are "at risk of future litigation" over the '672 Patent if this action

proceeds without GI.  *See Cooper*, 182 F.R.D. at 248 (finding complete relief required

joinder of absent party with "right to sue" on patent).

In addition, GI is necessary to resolve a dispute between Hewlett-Packard Company ("HP") and CLI regarding HP's license rights to the '672 Patent pursuant to a prior license granted to HP. (Casino Decl., Att. A at ¶¶ 228-234.) As an owner of an undivided one-half interest in the '672 Patent, GI had an unrestricted right to license the '672 Patent in all fields of use, absent an agreement between GI and CLI to the contrary. *See, e.g., Schering*, 104 F.3d at 344 ("[U]nless the co-owner has given up these rights through an 'agreement to the contrary,' 35 U.S.C. § 262, the co-owner may not be prohibited from exploiting its rights in the patent, including the right to grant licenses to third parties on whatever conditions the co-owner chooses."). In fact, GI had the right to license the '672 Patent in all fields of use as the Co-Ownership Agreement and the 1997 Amendment make clear.[4]

Thus, because at least HP alleges that it cannot be afforded complete relief under its prior license agreement absent a determination of the respective co-ownership rights of CLI and GI, GI is a necessary party. *See Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1462 (Fed. Cir. 1990)(upholding joinder under Rule 19 because determination of absent party's interest in the patents-in-suit must be resolved to resolve dispute between the original parties); *Cooper*, 182 F.R.D. at 248 (finding absent potential co-owner was necessary party under Rule 19(a)(1) because

---

[4] While CLI and GI limited their own rights to use the '672 Patent to certain defined fields of use (*see* Casino Decl., Att. F at §2.2), CLI and GI did not enter into any agreement restricting their otherwise unlimited right to license in all fields of use. *See, e.g., Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A.*, 944 F.2d 870, 875 (Fed. Cir. 1991) (noting that a patent "is, in effect, a bundle of rights which may be divided and assigned, or retained in whole or in part"). Rather, CLI and GI agreed: "In the event that a party grants a license under the Jointly Owned Patents to a third party, the licensing party agrees to execute an agreement with its licensee that binds the licensee (and its sublicensees, if any) to the field of use limitations enumerated in this Section 2.2." (Casino Decl., Att. F at § 2.2.) This provision did not limit GI's power to grant a license outside of its field of use, but gave CLI a cause of action for breach if GI failed to execute an agreement with its licensees limiting their field of use. GI did not execute such an agreement with HP.

"[o]wnership of the 'right to sue' under the patents is a fundamental issue in this action"); *see also Schutten v. Shell Oil Co.*, 421 F.2d 869, 874 (5th Cir. 1970)(finding absent party necessary to action because determination of absent party's rights in land "must necessarily be adjudicated before the trespass and accounting issues are reached"). Moreover, because of the potential for a disagreement between GI and CLI about the scope of their respective rights, other defendants face the possibility of incurring multiple or inconsistent obligations.

ii.    Fed. R. Civ. P. 19(a)(2)(i)

Under Rule 19(a)(2)(i), GI is a necessary party because disposition of this action without GI may "as a practical matter impair or impede [GI's] ability to protect" its interest in the subject matter of this action—the '672 Patent. Here, GI is a co-owner of the '672 Patent and derives revenue from licensing the '672 Patent to, at least, the MPEG patent pool. (*See* Casino Decl., Att. L.) Thus, GI has a direct financial interest in participating in claim construction proceedings and avoiding a judgment that the '672 Patent is invalid or unenforceable. Several courts have found that a financial interest, like GI's, is sufficient to make GI a necessary party. *See, e.g., Tycom Corp. v. Redactron Corp.*, 380 F. Supp. 1183, 1187-88 (D. Del. 1974)("As legal title holder of the patent in suit entitled to royalties and half of all damages recovered in any infringement suit . . . Holmes possesses an interest relating to the subject matter of this action."); *Messerschmitt-Boelkow-Blohm v. Hughes Aircraft Co.*, 483 F. Supp. 49, 52-53 (S.D.N.Y. 1979)(finding absent party necessary since any finding of invalidity "would as a practical matter impair or impede their ability to protect their asserted interest in the patent"); *Schutten*, 421 F.2d at 874.

Moreover, as a licensor of the '672 Patent, GI also has an interest in any determination of its rights to license the '672 Patent—a determination that, as discussed above, is necessary to resolve HP's license defense. Because co-owners are considered to have opposing interests, CLI cannot be relied upon to protect GI's interests in its absence. *See, e.g., Willingham*, 555 F.2d at 1344. Thus, GI's interest in protecting its licensing rights vis-à-vis CLI would be prejudiced absent GI's participation in this action.

In addition, to the extent that GI's conduct may form the basis for an implied license, equitable estoppel or other defense, GI presumably has a strong interest in defending its conduct. GI cannot reasonably expect that either CLI's or Defendants' interests will be sufficiently aligned with GI's interests such that GI would not be prejudiced if it were not joined. *See, e.g., Cooper*, 182 F.R.D. at 249 (noting court cannot be certain that absent party's interests will be "fully and fairly represented" because parties need not make every argument on the merits that the absent party would or could make); *Schutten*, 421 F.2d at 874 ("It is clear that courts should not proceed simply because the unjoined party is not 'bound' in the technical sense.").

### iii.    Fed. R. Civ. P. 19(a)(2)(ii)

Because GI's absence from this action would leave Defendants "subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations," GI is a necessary party. Fed. R. Civ. P. 19(a)(2)(ii). As the Fifth Circuit stated in *Schutten v. Shell Oil Co.*, "one of the purposes, though not the sole purpose, of Rule 19 is the avoidance of multiple litigation of essentially the same issues." 421 F.2d at 874.

If GI is absent, GI may not be bound by the outcome of this action because it will not have had a full and fair opportunity to litigate the underlying issues. If GI is not bound by the outcome of this litigation, both CLI and Defendants could be at risk of inconsistent obligations and additional lawsuits on the very same subjects at issue in this case. *See Cooper*, 182 F.R.D. at 249-50. Thus, Defendants "have a justifiable fear that should they prevail and the court determine that the patent in suit is either invalid or not infringed, the remaining joint owners might still relitigate these issues at a later date in another costly and vexatious proceeding." *See Willingham*, 555 F.2d at 1345. Accordingly, GI is a necessary party under Rule 19(a)(2)(ii).

### 2.    GI cannot be joined

Upon finding that a party is a necessary party, Rule 19(a) provides that "the court shall order that the person be made a party" if joinder is feasible. Here, given GI's written agreement to join an infringement action as a party plaintiff (Casino Decl., Att. F at § 2.5) and the well-settled rule that "[a]n action for infringement must join as plaintiffs all co-owners," *Ethicon*, 135 F.3d at 1467, GI's absence from this action indicates CLI cannot compel GI to join in this action. That fact indicates that the joinder of GI is not feasible.

### 3.    GI is an indispensable party

Where, as here, joinder of the absent necessary party is not feasible, the court must determine "whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent party being thus regarded as indispensable." Fed. R. Civ. P. 19(b). The determination that an absent party is indispensable pursuant to Rule 19(b) requires the balancing of four interests:

> First to be considered is the plaintiff's interest in a federal forum, second, the defendant's interest in avoiding "multiple litigation, or inconsistent relief, or sole responsibility for a liability he shares with another," third, the absentees' interest in avoiding prejudice from the proceeding, and fourth, the interest of the courts and the public in complete, consistent, and efficient settlement of controversies.

*Pulitzer-Polster*, 784 F.2d at 1312 (citing *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102 (1968)).[5]

Here, as detailed below, dismissal of this case for failure to join GI would:  (1) not prejudice CLI's ability to pursue a remedy in an alternate federal forum; (2) avoid subjecting Defendants to the possibility of later costly and vexatious litigation with GI regarding the '672 Patent; (3) protect GI's interests in any determination of the '672 Patent's scope, validity, enforceability and of GI's right to license the '672 Patent; and (4) advance the interest of the courts and the public in the complete, consistent and efficient resolution of this dispute.  Accordingly, GI is an indispensable party.

        i.    CLI's interest in pursuing a remedy in a federal
              forum will not be prejudiced by dismissal

Dismissal of this action would not prejudice CLI's ability to pursue a remedy in an alternate federal forum.  *See Provident*, 390 U.S. at 109 ("Before the trial, the strength of this interest obviously depends upon whether a satisfactory alternative forum exists.").  If this action were dismissed, CLI could pursue a remedy in the

---

[5]  Rule 19(b) also directs courts to consider the possibility of shaping relief to accommodate these four interests.  *Provident*, 390 U.S. at 111-12.  However, as the Fifth Circuit has recognized, even if a district court "could fashion a judgment which was adequate while at the same time protective of unassertable rights, additional litigation would most assuredly develop later."  *Schutten*, 421 F.2d at 875; *see also Cooper*, 182 F.R.D. at 254.

District of Delaware, where a declaratory judgment action naming all necessary and indispensable parties is currently pending.

The Delaware DJ Action seeks the same declaration of rights as this action.  For example, the Delaware action seeks, among other things, a determination of whether the '672 Patent is infringed, the same determination CLI seeks in this action.

The availability of an alternate forum and the similarity of issues between this action and the Delaware DJ Action weigh in favor of dismissal of this action.  *See Pulitzer-Polster*, 784 F.2d at 1313; *Cooper*, 182 F.R.D. at 253.

ii.    Defendants' interests in avoiding duplicative litigation and inconsistent obligations weigh in favor of dismissal

Defendants' interests in avoiding duplicative and costly litigation over the '672 Patent weighs heavily in favor of dismissal of this action.  As the Fifth Circuit has explained, under Rule 19(b) a "defendant has the right to be safe from needless multiple litigation and from incurring avoidable inconsistent obligations." *Schutten*, 421 F.2d at 873.  Here, a decision in GI's absence would prejudice Defendants since GI could sue for infringement of its co-owned '672 Patent in a later action.  *See Cooper*, 182 F.R.D. at 253.  The theories of res judicata and collateral estoppel may not protect Defendants from a suit for infringement of the '672 Patent brought by GI if GI is not a party to this action.  *See Willingham*, 555 F.2d at 1344-45 (noting that "a finding of invalidity or non-infringement is not necessarily binding on an absent owner")(citing *Blonder-Tongue Labs., Inc. v. Univ. of Illinois Found.*, 402 U.S. 313, 350 (1970)); *Cooper*, 182 F.R.D. at 253-54.  Therefore, if Defendants succeed in invalidating the '672 Patent

in GI's absence, GI may not be barred from asserting infringement of the '672 Patent in later litigation to which it is a party.

       iii.    GI's interests in avoiding prejudice from
                  this action weigh in favor of dismissal

As discussed above, GI has significant interests in the '672 Patent that would be put at risk if this action proceeds without GI.  Because GI's rights as a co-owner of the '672 Patent are central issues in this action, GI's ownership interests, as well as its obvious interests in the claim construction, validity, enforceability and infringement of the '672 Patent, would be prejudiced if this action proceeds without GI.  *See, e.g., Cooper*, 182 F.R.D. at 254; *Suprex Corp. v. Lee Scientific, Inc.*, 660 F. Supp. 89, 94 (W.D. Pa. 1987); *Tycom*, 380 F. Supp. at 1190.

       iv.    The interest of the courts and the public in complete,
                consistent and efficient settlement of controversies
                weighs in favor of dismissal

The interest of the courts and the public in complete, consistent and efficient resolution of controversies would be best served by the resolution of all disputes regarding the '672 Patent in a single action.  However, as discussed above, a determination of the respective co-ownership rights of CLI and GI is essential to any disposition of CLI's infringement claim.  In addition, if GI is absent from this action, Defendants may be subject to duplicative litigation over the '672 Patent.  Thus, a judgment in GI's absence would be inadequate and would contravene the public's "stake in settling disputes by wholes, whenever possible." *Provident*, 390 U.S. at 111.

The interest of the courts and the public is particularly compelling here because patent suits "often consume a great amount of time due to their complexity and because there is a great public interest in determining the status of a patent once

and for all." *Tycom Corp.*, 380 F. Supp. at 1190.  Accordingly, "patent controversies, if possible, should be settled in a single action."  *Id.* (dismissing complaint and holding patent owner to be indispensable under Rule 19).

Therefore, given the availability of an alternate federal forum in the District of Delaware where all necessary and indispensable parties, including GI, have already been joined in a single action, Defendants' motion to dismiss this action should be granted.

## IV.    IF THIS CASE IS NOT DISMISSED, PREFERENCE SHOULD BE GIVEN TO THE DELAWARE DJ ACTION SINCE IT IS THE FIRST FILED ACTION WITH ALL OF THE PROPER PARTIES

This Court should allow the Delaware DJ Action to proceed under the first-to-file rule since it is the first action that includes all necessary parties.  *See, e.g.*, *Mallinckrodt Med., Inc. v. Nycomed Imaging A.S.*, 49 U.S.P.Q.2d 1474, 1477-88 (D. Mo. 1998)(finding action filed later in time to be the first-filed action due to addition of parties); *see also Nelson v. Adams USA, Inc.*, 529 U.S. 460, 467 n.1, (2000)(date party is joined cannot relate back to filing date of action unless the failure to join is due to mistake concerning the identity of the proper party); c*f. Signtech, Inc. v. 3M Co.*, 15 U.S.P.Q.2d 1143, 1144 (D. Md. 1989), *aff'd*, 895 F.2d 1421 (Fed. Cir. 1990)("the interests of justice would be best served if the matter were to proceed to judgment . . . where complete relief unquestionably can best be afforded").

As this Court is aware, "[t]he Fifth Circuit generally follows the first-to-file rule."  *Datamize, Inc. v. Fidelity Brokerage Services, LLC*, No. 2:03-CV-321 DF, slip op. at 4 (E.D. Tex. Apr. 22, 2004).  The rule is based on the principles of comity, avoiding interference with the affairs of another court and avoiding duplicative litigation.  *Id.*

In applying the first-to-file rule, this Court must decide two questions:  "(1) are the two pending actions so duplicative or do they involve such substantially similar issues that one court should decide the subject matter of both actions, and if so, (2) which of the two courts should take the case."  *Id.*  Once this Court determines that the first-to-file rule is applicable, as it is here, then transfer is normally appropriate:

> Once the likelihood of substantial overlap between the two suits has been demonstrated, it is no longer up to the second-filed court to resolve the question of whether both should be allowed to proceed."  *Cradle Co. v. Whataburger of Alice, Inc.,*  174 F.3d 599, 605-06 (5th Cir. 1999)(*citing Mann Mfg., Inc., v. Hortex, Inc.,* 439 F.2d 403, 407 (5th Cir. 1971)).  Instead, "the proper course of action [is] for the [second-filed] court to transfer the case" to the first-filed court.  *Id.* at 606.  It is then the responsibility of the first-filed court to decide "whether the second suit filed must be dismissed, stayed, or transferred and consolidated."  *Sutter Corp. v. P&P Indus., Inc.,* 125 F.3d 914, 920 (5th Cir. 1997).

*Datamize*, slip op. at 4-5.

There is no question here that there is an identity of issues with the first-filed Delaware DJ Action since the assertion of the '672 Patent against the JPEG Standard is the foundation of both actions.

In order to avoid the first-to-file rule, CLI would have to show "compelling circumstances."  *Igloo Prods. Corp. v. Mounties, Inc.,* 735 F. Supp. 214, 217 (S.D. Tex. 1990).  No such circumstances exist here.  CLI knew by its agreements with its co-owner GI that GI should have been a party.  CLI proceeded at its own risk without GI.  Moreover, as discussed below, this case simply has little or no connection with the Eastern District of Texas.

## V.    CONVENIENCE OF THE PARTIES AND WITNESSES AND THE INTERESTS OF JUSTICE ALSO FAVOR TRANSFER

To prevent the waste of time, energy, money, and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense, a court may order that an action be transferred to another district or division. *Data Treasury Corp. v. First Data Corp.*, 243 F. Supp. 2d 591, 593 (N.D. Tex. 2003). The relevant transfer statute, 28 U.S.C. § 1404(a), provides:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

28 U.S.C. § 1404(a)(1993). This Section vests in the district courts, a broad power to transfer cases before them. *Norwood v. Kirkpatrick*, 349 U.S. 29, 31-32 (1955). Under Section 1404(a) this action can only be transferred to a jurisdiction where the civil action "might have been brought." Since the joint patent owners and Forgent, as well as most of the accused infringers, are incorporated in Delaware and sales of the accused products would reach Delaware, it clearly is a venue in which this action might have been brought.

The Fifth Circuit recently recounted the relevant considerations under 28 U.S.C. § 1404(a):

> The determination of "convenience" turns on a number of private and public interest factors, none of which are given dispositive weight. *Action Indus., Inc. v. U.S. Fidelity & Guar. Co.,* 358 F.3d 337, 340 (5th Cir. 2004)(citing *Syndicate 420 at Lloyd's London v. Early Am. Ins. Co.,* 796 F.2d 821, 827 (5th Cir. 1986)). The private concerns include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make

> trial of a case easy, expeditious and inexpensive. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6, 70 L. Ed. 2d 419, 102 S. Ct. 252 (1981). The public concerns include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law. *Id.*

*In re Volkswagen A.G.,* No. 04-40303, 2004 U.S. App. LEXIS 9683, at *6-*7 (5TH Cir. May 18, 2004).

Upon review of these factors, it is clear that "the interests of justice" and the "convenience of the parties and witnesses" weigh in favor of transferring this action to Delaware. *Id.* Not one factor under the balancing test employed under Section 1404 favors keeping this case in this District.

   A.    Plaintiff's Choice Of Forum
         And Place Of The Alleged Wrong

In *Datamize*, in addition to the factors listed in *Volkswagen*, this Court looked at the plaintiff's choice of forum and place of the alleged wrong as factors. *Datamize,* slip op. at 13. Deference to CLI's choice of forum does not weigh against a transfer since the requested transfer is to a forum where CLI, its parent Forgent, and the two co-owners of the '672 Patent all chose to incorporate.

Ordinarily, the plaintiff's choice of forum is entitled to considerable weight. *Mortensen v. Maxwell House Coffee Co.*, 879 F. Supp. 54, 57 (E.D. Tenn. 1995). However, that choice "carries little significance" when none of the operative facts occurred within the forum selected by plaintiff. *John Hanby & Hanby Envtl. Lab. Procedures v. Shell Oil Co.*, 144 F. Supp. 2d 673, 677 (E.D. Tex. 2001). *See also TV-3, Inc. v. Royal Ins. Co. of Am.*, 28 F. Supp. 2d 407, 411 (E.D. Tex. 1998)(giving less

deference to plaintiff's choice of forum where "the facts underlying this cause of action did not occur within the Eastern District"); *Mortensen*, 879 F. Supp. at 57. Further, "the usual deference accorded the plaintiff's choice of forum is of minimal value when none of the parties reside in this division of this District." *Rock Bit Int'l v. Smith Int'l*, 957 F. Supp. 843, 844 (E.D. Tex. 1997); *see also Shoemake v. Union Pac. R.R. Co.*, 233 F. Supp. 2d 828, 831 (E.D. Tex. 2002)("the plaintiff's choice of forum will be given close scrutiny where, as here, the plaintiff does not live within the Division of the Court.").

Here, CLI has no relationship to this District. CLI does not manufacture or sell goods in the Eastern District of Texas; does not have any offices or employees here; and does not engage in any other activity by which it could claim that operative facts occurring in the Eastern District of Texas.

The "operative facts" of CLI's assertion are that Defendants offered to sell, sold, used or imported articles that infringe the '672 Patent (Texas Compl. at ¶ 35). The manufacture of the accused products does not occur in CLI's chosen forum nor does any party have any significant offices, manufacturing facilities, or marketing personnel in the Eastern District of Texas. Sales of the accused products in the Eastern District of Texas are a result of simply placing them in the stream of commerce, rather than manufacturing or significant sales operations in the Eastern District of Texas. Sale of the accused products is managed from the headquarters of each Defendant, none of which centers its operations out of the Eastern District of Texas. Sales of the accused products in the Eastern District of Texas represent only a small percentage of total sales, which occur worldwide. *See Langton v. Cbeyond*

*Communication, L.L.C.*, 282 F. Supp. 2d 504, 506 (E.D. Tex. 2003)(denying transfer, in part, based upon the defendant's targeted sales, which included multiple visits by salespeople, in the district that amounted to 7 percent of its overall sales in the state). Moreover, sales of allegedly infringing products do not alone provide sufficient contact with the forum to override other factors that weigh in favor of a transfer. *N. Telecom Ltd. v. Samsung Elec. Co.*, No. 3:94-CV-1115-D, 1995 U.S. Dist. LEXIS 21891, at *7 (N.D. Tex. Jan. 17, 1995)(granting transfer where connection to forum was limited to Defendants sale of accused goods and presence of customer service center); *Ricoh Co. v. Honeywell, Inc.*, 817 F. Supp. 473, 483 (D.N.J. 1993)(holding that where relevant, central, and essential activities occur outside the forum, sales alone in the forum are an insufficient contact).

Another operative and important fact—development of the JPEG Standard—occurred not only outside of this District, but also outside of the State of Texas. (Casino Decl., Att. A at ¶¶ 70-95.)  Similarly, important sources of relevant facts such as ANSI, the United States delegation to JPEG, are likewise located outside the forum state.

The named inventors of the '672 Patent reside outside of the Eastern District of Texas.  (Casino Decl., Att. O.)  The facts relating to the making of the purported invention all occurred in California.

Thus, the sole connection to CLI's chosen venue is a small amount of Defendants' sales, which cannot overcome overwhelming indications that the "center of gravity" of the case is located elsewhere.  "This is especially true when sales take place nationwide." *N. Telecom Ltd.*, 1995 U.S. Dist. LEXIS 21891, at *7.

B.    <u>The Relative Ease Of Access To Sources Of Proof</u>

While this factor may not be as essential in the electronic age, *Datamize*, slip op. at 14, there are simply no significant documents, witnesses or other evidence that are located within the proximity of this District.  Further, 13 of the Defendants have principal places of business located on the East Coast, including New York (three), New Jersey (five), and Connecticut (two).

Thus, proceeding in this District would waste resources with respect to the production of documents and other sources of proof.

C.    <u>The Availability Of Compulsory Process</u>

This factor strongly supports a transfer.  This Court is obliged to consider the convenience of witnesses, including non-party witnesses.  *Volkswagen*, 2004 U.S. App. LEXIS 9683, at *7-*12 (requiring courts to consider the convenience of all potential witnesses).    The factors concerning the costs associated with bringing willing witnesses to trial and the availability of compulsory process to bring unwilling witnesses to trial are "very important, possibly even the most important of the list of factors." *TV-3*, 28 F. Supp. 2d at 412 (citation omitted).  The related inquiry should be directed to "the content and quality, rather than quantity, of their testimony." *Id*.

As CLI has generically accused implementations of the JPEG Standard by the 27 Defendants of infringement, the development of the JPEG Standard will be a substantial issue in this case.  Under Rule 45, Fed. Civ. P., a district court sitting in Texas will be unable to compel the testimony of third-party witnesses at ANSI Headquarters (approximately 1,200 miles from Marshall, Texas), who might have no other incentive to appear before the Court.

In contrast, the Court in Wilmington, Delaware would be able to reach ANSI Headquarters in Washington, D.C. with its subpoena power.

D.    <u>The Cost Of Attendance Of Willing Witnesses</u>

This does not appear to be a decisive factor in this case.

E.    Other Practical Problems That Make Trial
       <u>Of A Case Easy, Expeditious And Inexpensive</u>

As this case is currently postured, there are two separate Actions in the Eastern District of Texas.   There is pending the single DJ Action in Delaware which can include all parties to both Texas Actions and indispensable party GI.   In light of this, Delaware is the more efficient jurisdiction.

F.    Administrative Difficulties
       <u>Flowing From Court Congestion</u>

The Eastern District of Texas is well-known for its fast docket and is frequently the choice of plaintiffs.  *See Tex. Instruments, Inc. v. Micron Semiconductor, Inc.*, 815 F. Supp. 994, 999 (E.D. Tex. 1993)(stating that the court's adoption of "the [Civil Justice Expense and Delay Reduction] Plan, as well as the condition of this Court's docket, are significant factors to consider in determining whether a case should be transferred under 28 U.S.C. § 1404(a)").    However, the "[s]peed of disposition of lawsuits without . . . connection [to this District] is not a valid reason for forum shopping. . . . If federal courts took cases on this basis alone, this court could become a congested court, and [its] docket would balloon with cases without any rational relationship to [this] District, or to [its] judicial resources."  *Rock Bit*, 957 F. Supp. at 844; *see also John Hanby*, 144 F. Supp. 2d at 679.

The current workload per judge and steadily rising caseload in the Eastern District favors a transfer.  For the 12 months ending September 30, 2003, the Eastern District of Texas docketed a total of 4,072 new cases (431 civil filings per judgeship) up 12.8 percent from 2002.  For the same period, the District of Delaware received only 1,362 new filings (306 civil filings per judgeship) down 32.9 percent from 2002. (Casino Decl., Att.  N.)

When the relative complexity of these new filings is taken into consideration, the rising tide of litigation in the Eastern District of Texas becomes an even more compelling reason for transfer under the present facts.  While the District of Delaware took in 319 "weighted filings" per judgeship in 2003, the Eastern District of Texas received 602, nearly double the workload per judge.[6]  (*Id.*)

Thus, the Eastern District of Texas may not be the most efficient venue to hear this Action, in light of its current backlog of cases which is steadily rising.

G.    Local Interests In Having Localized
       Controversies Decided At Home

One key consideration is the "local interest in having localized controversies decided at home,"  *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981).  This factor weighs heavily in favor of the locale where the parties reside.  *Volkswagen*, 2004 U.S. App. LEXIS 9683, at *13*14.

---

[6]  Weighted filings assign a certain weight to various classes of filings based upon their complexity and amount of time required for resolution.  For example, average civil cases or criminal felony defendants each receive a weight of approximately 1.0; for more time-consuming cases, higher weights are assigned (e.g., a death penalty habeas corpus case is assigned a weight of 5.99); cases demanding relatively little time from judges receive lower weights (e.g., a student loan case is assigned a weight of 0.031).    (Federal Court Management Statistics, Explanation of Selected Terms, *available at* http://www.uscourts.gov/library/fcmstat/cmsexpl03.html.)

The Supreme Court had held that "[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-09 (1947).

This factor strongly supports a transfer. The District of Delaware has a greater interest in hearing this Action. The two co-owners of the '672 Patent, CLI and GI, as well as CLI's parent Forgent are incorporated in and are residents of Delaware. *Penn. Ins. Guar. Ass'n v. Charter Abstract Corp.*, 790 F. Supp. 82, 85 (E.D. Pa. 1992)("It is the settled rule that, insofar as a corporation can be considered a resident of a state, it is a resident of the state in which it is incorporated, and no other."). Between the two Texas actions, many of the 30 Defendants have connections to Delaware. Including the proper parties on the patentee side, 19 parties in total are incorporated in Delaware and eight are incorporated in other East Coast States. Thus, Delaware has a strong connection to this Action, while the Eastern District of Texas does not. Accordingly, residents of the District of Delaware should bear the burden of jury duty since its residents have a greater interest in seeing that corporations formed there conduct themselves properly. *Mortensen*, 879 F. Supp. at 56-57.

CLI has no assets in nor does it conduct any business whatsoever in the Eastern District of Texas. Accordingly, it is unfair to saddle the potential jurors in the Marshall area with the burden of serving on a jury in a complicated and undoubtedly lengthy trial with a marginal connection to the district.

H.    The Familiarity Of The Forum With The Governing Law

Since both the District of Delaware and this Court have expertise in handling patent cases, this factor does not affect the transfer analysis.

I.    <u>Avoidance Of Unnecessary Problems Of Conflicts Of Law</u>

It is not anticipated that this factor will affect the transfer analysis.

J.    <u>Interests Of Justice Favor The District Of Delaware</u>

The transfer of this Action will not constitute a waste of any judicial resources as this action has been on the docket for a short time and the Court has not taken any action on the merits.   Consequently, "little judicial effort will go to waste by transferring [this action] to a forum unfamiliar with it." *Kondrath v. Arum*, 881 F. Supp. 925, 931 (D. Del. 1995)(citing *Kirschner Bros. Oil, Inc. v. Pannill,* 697 F. Supp. 804, 808 (D. Del. 1988)).

CLI should not benefit from filing this Action, without its co-owner GI.  CLI (as well as Forgent and GI) further should be held to answer in the forum where they chose to reside.

## VI.    CONCLUSION

For the reasons set forth above, the instant action should be dismissed. Alternatively, in order to promote efficiency and judicial economy, this Court should transfer this action to the District of Delaware.

On behalf of all Defendants joining in this Motion:

/s/_____
Eric M. Albritton
Texas Bar No. 00790215
Albritton Law Firm
P.O. Box 2649
Longview, Texas 75606
903/757-8449 (office)
903/758-7397 (fax)
eric@albrittonlawfirm.com

Counsel for Axis Communications, Inc.; Fujitsu Computer Products of America, Inc.; Hewlett-Packard Company; JVC Americas, Matsushita Electric Corporation of America, Panasonic Communications Corporation of America and Panasonic Mobile Communications Development Corporation of USA; Ricoh Corporation and Savin Corporation

**OF COUNSEL:**

H. Michael Hartmann
mhartmann@leydig.com
Wesley O. Mueller
wmueller@leydig.com
Leydig, Voit & Mayer, Ltd.
Two Prudential Plaza; Suite 4900
Chicago, Illinois 60601
Tel:  312-616-5600
Fax:  312-616-5700
(Counsel for Agfa Corp.)

George A. Riley
griley@omm.com
O'Melveny & Myers L.L.P.
Embarcadero Center West
275 Battery Street
San Francisco, California 94111-3305
Tel:  415-984-8700
Fax:  415-984-8701
(Counsel for Apple Computer, Inc.)

Mark C. Scarsi
mscarsi@omm.com
Michelle L. Davidson
mdavidson@omm.com
O'Melveny & Myers L.L.P.
400 South Hope Street
Los Angeles, California 90071-2899
Tel:   213-430-6000
Fax:  213-430-6407
(Counsel for Apple Computer, Inc.)

Lance Lee
wlancelee@aol.com
Young, Pickett & Lee
4122 Texas Blvd.
Texarkana, Texas 75503
Tel: 903-794-1303
Fax: 903-794-5098
(Counsel for Apple Computer, Inc.)

Barry W. Graham
barry.graham@finnegan.com
Elizabeth A. Niemeyer
Elizabeth.niemeyer@finnegan.com
Finnegan, Henderson, Farabow,
Garrett & Dunner, L.L.P.
1300 I Street, N.W.
Washington, D.C. 20005-3315
Tel:  202- 408-4017
Fax:  202-408-4400
(Counsel for Axis Communications, Inc.)

John A. O'Brien
jo'brien@fchs.com

Nicholas M. Cannella
ncannella@fchs.com
Fitzpatrick, Cella, Harper & Scinto
30 Rockefeller Plaza
New York, New York 10112-3801
Tel.:  212-218-2100
Fax:  212-218-2200
(Counsel for Canon U.S.A., Inc.)

Brian L. Klock
bklock@fchs.com
Fitzpatrick, Cella, Harper & Scinto
1900 K Street, N.W.
Washington, D.C. 20006
Tel:  202-530-1010
Fax:  202-530-1055
(Counsel for Canon U.S.A., Inc.)

Jack B. Baldwin
jbb@baldwinlaw.com
Baldwin & Baldwin, L.L.P.
400 West Houston Street
Marshall, Texas 75670
Tel:  903-935-4131
Fax:  903-935-1397
(Counsel for Canon U.S.A., Inc.)

Joseph P. Lavelle
lavellej@howrey.com
Kenneth W. Donnelly
donnellyk@howrey.com
Vivian S. Kuo
kuov@howrey.com
Howrey Simon Arnold & White
1299 Pennsylvania Ave., N.W.
Washington, D.C.  20004
Tel:  202-783-0800
Fax:  202-383-6610
(Counsel for Eastman Kodak Company)

Nicholas H. Patton
nickpatton@texarkanalaw.com
P.O. Box 5398
Texarkana, Texas 75505
Tel:  903-792-7080

Fax:  903-792-8233
(Counsel for Eastman Kodak Company)

Steven J. Routh
sjrouth@hhlaw.com
Hogan & Hartson, L.L.P.
555 13th Street N.W.
Washington, D.C.  20004
Tel:  202-637-6472
Fax:  202-637-5910
(Counsel for Fuji Photo Film U.S.A.)

William C. Gooding
billgooding@goodingpc.com
Gooding & Dodson
2005 Moores Lane
P.O. Box 1877
Texarkana, Texas 75504
Tel:  903-794-3121
Fax:  903-793-4801
(Counsel for Fuji Photo Film U.S.A.)

Christopher E. Chalsen
cchalsen@milbank.com
Michael M. Murray
mmurray@milbank.com
Milbank, Tweed, Hadley & McCloy, LLP
One Chase Manhattan Plaza
New York, New York 10005-1413
Tel:  212-530-5380
Fax:  212-822-5380
(Counsel for Fujitsu Computer Products of America, Inc.)

W. Bryan Farney, P.C.
bfarney@deweyballantine.com
Darryl J. Adams
dadams@deweyballantine.com
Dewey Ballantine LLP
401 Congress Ave., Suite 3200
Austin, Texas 78701-2478
Tel:  512-226-0300
Fax:  512-226-0333
(Counsel for Gateway, Inc.)

Nicholas H. Patton

280640.1

nickpatton@texarkanalaw.com
Patton, Tidwell & Schroeder, L.L.P.
4605 Texas Blvd.
Texarkana, Texas 75505-5398
Tel:  903-792-7080
Fax:  903-792-8233
(Counsel for Gateway, Inc.)


Danny L. Williams
dwilliams@wmalaw.com
Williams, Morgan & Amerson
10333 Richmond, Suite 1100
Houston, Texas 77042
Tel:  713-934-4060
Fax:  713-934-7011
Fax:  903-792-8233
(Counsel for Hewlett-Packard Company)

John Allcock
jallcock@graycary.com
Sean C. Cunningham
scunningham@graycary.com
Bruce H. Watrous
bwatrous@graycary.com
Gray Cary Ware & Freidenrich
401 B Street, Suite 2000
San Diego, California 92101
Tel:  619-699-2700
Fax:  619-699-2701
Fax:  903-792-8233
(Counsel for Hewlett-Packard Company)

Alan  Albright
aalbright@graycary.com
Elizabeth Brown Fore
ebrownfore@graycary.com
1221 S. MoPac Expressway, Suite 400
Austin, Texas 78746
Tel:  512-457-7000
Fax:  512-457-7001
(Counsel for Hewlett-Packard Company)

Nicholas H. Patton
nickpatton@texarkanalaw.com

Patton, Tidwell & Schroeder, L.L.P.
4605 Texas Blvd.
Texarkana, Texas 75505-5398
Tel:  903-792-7080
Fax:  903-792-8233
(Counsel for Hewlett-Packard Company)

Daniel W. McDonald
dmcdonald@merchant-gould.com
Deakin T. Lauer
dlauer@merchant-gould.com
Merchant & Gould, P.C.
3200 IDS Center
80 S. 8th Street
Minneapolis, Minnesota 55402
Tel:  612-336-4637
Fax:  612-332-9081
(Counsel for JASC Software, Inc.)

Franklin A. Poff, Jr.
fpoff@cbplaw.com
Crisp, Boyd & Poff, L.L.P.
P.O. Box 6297
Texarkana, Texas 75505
Tel:  903-838-6123
Fax:  903-838-8489
(Counsel for JASC Software, Inc.)

Morton Amster
mamster@arelaw.com
Abraham Kasdan
akasdan@arelaw.com
Joseph Casino
jcasino@arelaw.com
Amster, Rothstein & Ebenstein LLP
90 Park Avenue
New York, New York 10016
Tel:  212-336-8000
Fax:  212-336-8001
(Counsel for JVC Americas, Matsushita Electric Corporation of America, Panasonic
Communications Corporation of America and Panasonic Mobile Communications
Development Corporation of USA)

Jennifer Parker Ainsworth
jainsworth@wilsonlawfirm.com

Wilson, Sheehy, Knowles, Robertson & Cornelius
P.O. Box 7339
Tyler, Texas 75711
Tel:  903-509-5000
Fax:  903-509-5092
(Counsel for Kyocera Wireless Corporation)

Stuart Lubitz
slubitz@HHlaw.com
Hogan & Hartson, L.L.P.
Biltmore Tower
500 South Grand Avenue, Suite 1900
Los Angeles, California 90071
Tel:  213-337-6700
Fax:  213-337-6701
(Counsel for Kyocera Wireless Corporation)

Charlene M. Morrow
cmorrow@fenwick.com
Darryl M. Woo
dwoo@fenwick.com
Fenwick & West
801 California Street
Mountain View, California 94041
Tel:  650-988-8500
Fax:  650-938-5200
(Counsel for Macromedia, Inc.)

Gil Gillam
gil@gillamsmithlaw.com
Gillam & Smith, L.L.P.
110 South Bolivar, Suite 204
Marshall, Texas 75670
Tel:  903-934-8450
Fax:  903-934-9257
(Counsel for Macromedia, Inc.)

John W. Kozak
jkozak@leydig.com
Steven P. Petersen
spetersen@leydig.com
Leydig, Voit and Mayer, Ltd
Two Prudential Plaza
180 North Stetson, Suite 4900
Chicago, Illinois  60601

Tel:  312-616-5650
Fax:  312-616-5700
(Counsel for Mitsubishi Digital Electronics America, Inc.)

Frederick H. Colen
fcolen@reedsmith.com
Barry J. Coyne
bcoyne@reedsmith.com
Joshua S. Bish
jbish@reedsmith.com
Reed Smith, LLP
435 Sixth Avenue
Pittsburgh, Pennsylvania 15219
Tel:  412-288-3131
Fax:  412-288-3063
(Counsel for Oce North America, Inc.)

Clyde M. Siebman
clydesiebman@texoma.net
Siebman, Reynolds & Burg
Federal Courthouse Square
300 N. Travis Street
Sherman, Texas 75090
Tel:  903-870-0070
Fax:  903-870-0066
(Counsel for Oce North America, Inc.)

Mark D. Flanagan
mflanagan@wsgr.com
Bart E. Volkmer
bvolkmer@wsgr.com
Wilson Sonsini Goodrich & Rosati
650 Page Mill Road
Palo Alto, California   94303-1050
Tel:  650-493-9300
Fax:  650-493-6811
(Counsel for palmOne, Inc.)

M. Craig Tyler
ctyler@wsfr.com
Wilson Sonsini Goodrich & Rosati
8911 Capital of Texas Hwy. North
Westech 360, Suite 3350
Austin, Texas  78759-7247
Tel:  512-338-5400

Fax:  512-338-5499
(Counsel for palmOne, Inc.)

Anthony C. Roth
aroth@morganlewis.com
Morgan, Lewis & Bockius L.L.P.
1111 Pennsylvania Avenue, N.W.
Washington, D.C.  20004
Tel:  202-739-5188
Fax:  202-739-3001
(Counsel for Ricoh Corporation and Savin Corporation)

Robert J. Hollingshead
rhollingshead@morganlewis.com
Morgan, Lewis & Bockius LLP
Shin-Tokyo Building, 9th Floor
3-1, Marunouchi 3 chome
Chiyoda-ku, Tokyo 100-0005, Japan
Tel:  011-81-3-5219-2505
Fax:  202-739-3001
(Counsel for Ricoh Corporation and Savin Corporation)

M. Matthews Hall
hall@khpatent.com
Kolisch Hartwell, P.C.
200 Pacific Building
520 S.W. Yamhill Street
Portland, Oregon 97204
Tel:  503-224-6655
Fax:  503-295-6679
(Counsel for Riverdeep, Inc.)

E. Lee Haag
lhaag@fulbright.com
Marc L. Delflache
mdelftache@fulbright.com
Richard S. Zembek
rzembek@fulbright.com
Andrew Price
aprice@fulbright.com
Fulbright & Jaworski, LLP
1301 McKinney Street
Houston, Texas 77010-3095
Tel:  713-651-5429
Fax:  713-651-5246

(Counsel for Thomson, Incorporated)

Guy N. Harrison
gnharrison@att.net
Attorney at Law
217 North Center
Longview, Texas 75601
Tel:  903-758-7361
Fax:  903-753-9557
(Counsel for Thomson, Incorporated)

James P. Bradley
jbradley@sidley.com
William O. Fifield
wfifield@sidley.com
Sidley Austin Brown & Wood LLP
717 North Harwood
Dallas, Texas 75201
Tel:  214-981-3300
Fax:  214-981-3400
(Counsel for Xerox Corporation)

Lance Lee
wlancelee@aol.com
Young, Pickett & Lee
4122 Texas Blvd.
Texarkana, Texas 75503
Tel:  903-794-1303
Fax:  903-794-5098
(Counsel for Xerox Corporation)

<u>CERTIFICATE OF SERVICE</u>

 The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a).  As such, this motion was served on all counsel who are deemed to have consented to electronic service.  Local Rule CV-5(a)(3)(A).   Pursuant to Fed. R. Civ. P. 5(d) and Local Rule CV-5(e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by certified mail, return receipt requested, on this the 6th day of July, 2004.

/s/_____
Eric M. Albritton