**Compression Labs, Incorporated v. Agfa Corporation et al.,**
C.A. No. 2:04CV-158 DF

Motion to Dismiss Under Fed. R. Civ. P. 12(b)(7), or,
in the Alternative, Motion to Transfer

Attachment I to the
Declaration of Joseph M. Casino

CONFIDENTIAL

AGREEMENT RELATING TO LICENSE
AND
CO-OWNERSHIP AGREEMENT

THIS AGREEMENT (the "Agreement"), effective as of the 25nd day of January, 2002, is entered into by FORGENT NETWORKS, INC., a Delaware corporation formerly known as "VTEL Corporation" ("Forgent"), on its own behalf and on behalf of its wholly owned subsidiary Compression Labs, Incorporated, a Delaware corporation ("CLI"), and General Instrument Corporation, a Delaware corporation ("GI") (collectively, the "Parties").

RECITALS:

WHEREAS, CLI and Magnitude Compression Systems, Inc. ("Magnitude") and their respective successors are parties to certain agreements relating, inter alia, to the ownership of U.S. Patent Nos. 4,698,672 and 4,394,774 and foreign counterparts (the "Jointly Owned Patents") (such agreements, as amended, are referred to collectively as the "Co-Ownership Agreement");

NOW, THEREFORE, in consideration of the foregoing premises and mutual covenants herein contained, the Parties agree as follows:

1. Forgent represents and warrants to GI that CLI is a wholly owned subsidiary of Forgent, that CLI is a co-owner of the Jointly Owned Patents and that Forgent has the authority to act on behalf of CLI with respect to the exercise of CLI's rights set forth in the Co-Ownership Agreement.

2. GI represents and warrants to Forgent and CLI that Magnitude, formerly a wholly owned subsidiary of GI, has been merged into GI and its separate existence has ceased effective January 16, 2001; that GI, as the successor of Magnitude, is a co-owner of the Jointly Owned Patents and that GI has the authority to act with respect to the exercise of rights of Magnitude set forth in the Co-Ownership Agreement.

3. The Parties acknowledge and confirm that GI has the exclusive right to use and license the claims under the Jointly Owned Patents in the broadcast business as it was historically conducted by CLI prior to its sale to Magnitude and as such business has evolved (the "Broadcast Field"), without any accounting to Forgent or CLI.

4. The Parties acknowledge and confirm that Forgent, on behalf of CLI, has the exclusive right to use and license the claims under the Jointly Owned Patents in all fields without any accounting to GI or Magnitude, except in the Broadcast Field.

5. The Parties acknowledge and confirm that GI has been authorized under the Co-Ownership Agreement to enter into that certain License from Licensor to Licensing

1

Administrator (the "MPEG LA License Agreement"), dated July 1, 1997 between GI and MPEG LA, L.L.C. ("MPEG LA"), pursuant to which the Jointly Owned Patents were licensed to MPEG LA, in its capacity as administrator of the MPEG 2 patent pool. Except as provided in paragraph 6 hereof, MPEG LA, in its capacity as administrator of the MPEG 2 patent pool, may grant non-exclusive sublicenses of the MPEG 2 patent claims pursuant to the MPEG LA License Agreement, which sublicenses are not required by the Co-Ownership Agreement to be limited to the Broadcast Field.

6. The Parties further acknowledge and confirm that the foreign counterparts of U.S. Patent No. 4,698,672 have been removed from the MPEG-2 patent pool administered by MPEG LA (the "Foreign Counterparts"). The Parties acknowledge and confirm that (i) GI has the exclusive right to use and license, without any accounting to Forgent or CLI, the Foreign Counterparts in the Broadcast Field, and (ii) Forgent, on behalf of CLI, has the exclusive right to use and license, without any accounting to GI or Magnitude, the Foreign Counterparts in all fields except the Broadcast Field.

7. The Parties further acknowledge and confirm that the Broadcast Field does not include the manufacture, distribution or sale of products that implement or use the JPEG standard including such products as digital still cameras, digital still image devices, digital camcorders with a still image function, scanners, slide imagers and personal computers.

8. The Parties hereby amend the second sentence of Section 2.2 of the Amendment to the Co-Ownership Agreement to read as follows:

> "Such payments shall be made quarterly and the quarterly payments: (i) shall be due on January 31, April 30, July 31 and October 30 of each year, (ii) shall consist of twenty percent (20%) of all royalty payments received by GI pursuant to the MPEG LA License Agreement relating to the Jointly Owned Patents during the relevant quarter up to the 14th day preceding the end of the relevant quarter, and (iii) shall be accompanied by a scheduled setting forth in reasonable detail the basis upon which the royalty was calculated, including the license receipts for the MPEG-2 patent pool and GI."

Section 2.2 of such Amendment, as amended by this Paragraph 8, shall continue in full force and effect.

9. In further consideration of the agreements of GI contained herein, Forgent, in its capacity as a reseller of Polycom videoconferencing systems, hereby agrees to provide preferred pricing on such systems to GI, with respect to all such systems as GI may choose to purchase from Forgent for as long as Forgent is a reseller of Polycom systems. Such preferred pricing shall consist of Forgent's fully burden cost of such systems, plus 10%, which Forgent represents is approximately equal to its profit from the sale of such systems.

10. GI has been advised by Forgent and CLI that Forgent and CLI are endeavoring to commercialize the Jointly Owned Patents in CLI's fields of use. Forgent and CLI shall defend, indemnify and hold GI, and its employees, directors and agents harmless against any judgment,

damage, liability, loss or third party claim (including reasonable legal fees) ("Liability") incurred by them arising out of the efforts of Forgent and CLI to commercialize the Jointly Owned Patents. Within twenty (20) days after receipt of notice by a party indemnified hereunder of any claim for which indemnity or defense is to be sought hereunder, such indemnified party shall give notice in writing to Forgent of such claim; provided, however, the failure to notify Forgent within twenty (20) days will not relieve Forgent or CLI from any liability that it may have to any indemnified party under this Agreement, except to the extent Forgent demonstrates that the investigation or defense of any action arising from such claim is prejudiced by the indemnified party's failure to give notice. If any legal or other proceeding is commenced against an indemnified party and it gives notice to Forgent as provided herein, Forgent will be entitled to participate in such proceeding and, to the extent it wishes, to assume the defense of such proceeding with counsel satisfactory to the indemnified party, and after notice from Forgent to the indemnified party of its election to assume the defense of such proceeding, Forgent, as long as it diligently conducts such defense, shall not be liable to the indemnified party for any fees of other counsel or any other expenses with respect to the defense of the proceeding, other than reasonable costs of investigation. If Forgent assumes the defense, no compromise or settlement of such claims may be effected without the indemnified party's prior written approval unless (i) there is no finding or admission of any violation of law, or any violation of the rights of any person and no effect on any other claims that may be made against the indemnified party, and (ii) the sole relief is monetary damages paid in full by Forgent; and in any case, neither Forgent or CLI nor any indemnified party shall have any liability with respect to any compromise or settlement effected without its written consent.

11.   Notwithstanding any confidentiality agreement among the Parties, each Party consents to the furnishing of this Agreement by any other Party to third parties in connection with licensing efforts undertaken by any Party hereto of the Jointly Owned Patents, provided that this Agreement is submitted to such third parties pursuant to a customary nondisclosure agreement binding such third parties to maintain the confidential nature of this Agreement.

12.   This Agreement may be executed in one or more counterparts, each of which shall be deemed to be an original, but all of which, together, shall constitute one and the same instrument. A telecopy or facsimile transmission of a signed counterpart of this Agreement shall be sufficient to bind the party whose signature appears hereon. The Parties shall execute and deliver such additional documents and take such actions as another Party shall reasonably request or as shall be reasonably necessary or appropriate in connection with the effectuation of the purposes of this Agreement.

13.   Except as amended or clarified hereby, the Co-Ownership Agreement shall remain in full force and effect.

**CONFIDENTIAL**

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the date first set forth above.

GENERAL INSTRUMENT CORPORATION

By: *[signature]*
Name: Lee S. Zimmerman
Title: Vice President

COMPRESSION LABS, INC.

By: *[signature]*
Jay Peterson, Vice President and Chief Financial Officer

FORGENT NETWORKS, INC.
(formerly known as VTEL Corporation)

By: *[signature]*
Jay Peterson, Vice President and Chief Financial Officer

CONFIDENTIAL

4