RECEIVED-CLERK
U.S. DISTRICT COURT

2004 JUL 26 PM 8:04

TX EASTERN-MARSHALL

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

**FILED**
U.S. DISTRICT COURT
Eastern District of Texas

JUL 2 6 2004

DAVID MALAND, CLERK
By
Deputy _____

| | |
|---|---|
| Compression Labs, Incorporated, | ) |
| | ) |
| *Plaintiff,* | ) |
| v. | ) |
| | ) |
| 1. Agfa Corporation, | ) |
| 2. Apple Computer, Incorporated, | ) |
| 3. Axis Communications, Incorporated, | ) |
| 4. Canon, USA, Incorporated, | ) |
| 5. Concord Camera Corporation, | ) |
| 6. Creative Labs, Incorporated, | ) |
| 7. Eastman Kodak Company, | ) |
| 8. Fuji Photo Film U.S.A., | ) |
| 9. Fujitsu Computer Products of America, | ) |
| 10. Gateway, Incorporated, | ) |
| 11. Hewlett-Packard Company, | ) |
| 12. JASC Software, | ) |
| 13. JVC Americas Corporation, | ) |
| 14. Kyocera Wireless Corporation, | ) |
| 15. Macromedia, Incorporated, | ) |
| 16. Matsushita Electric Corporation of | ) |
| America, | ) |
| 17. Mitsubishi Digital Electronics America, | ) |
| Incorporated, | ) |
| 18. Océ North America, Incorporated, | ) |
| 19. Onkyo U.S.A. Corporation, | ) |
| 20. PalmOne, Incorporated, | ) |
| 21. Panasonic Communications Corporation | ) |
| of America, | ) |
| 22. Panasonic Mobile Communications | ) |
| Development Corporation of USA, | ) |
| 23. Ricoh Corporation, | ) |
| 24. Riverdeep, Incorporated (d.b.a. | ) |
| Broderbund), | ) |
| 25. Savin Corporation, | ) |
| 26. Thomson, Incorporated | ) |
| 27. Xerox Corporation, | ) |
| | ) |
| *Defendants.* | ) |

C.A. No. 2:04-CV-158-DF

**PLAINTIFF'S OPPOSITION TO
DEFENDANTS' MOTION TO
DISMISS UNDER FED. R. CIV.
P. 12(B)(7), OR, IN THE
ALTERNATIVE,
MOTION TO TRANSFER**

CHICAGO 289966v2 22768-00143

Dockets.Justia.com

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ...............................................................................................1

II.   BACKGROUND ................................................................................................2

      A.    Numerous Companies Have Recognized The Value Of The '672 Patent By
            Taking Licenses ..........................................................................................4
      B.    CLI Alone Has The Exclusive Rights To Sue And Recover For Infringement
            By The Accused Devices And To Control This Litigation..........................4

III.  ANALYSIS.........................................................................................................6

      A.    Defendants' Motion to Dismiss Should Be Denied Because CLI's Well-
            Pleaded Allegation That It Has The Exclusive Rights To Sue And Recover
            For Infringement By The Accused Devices Must Be Accepted As True..................6
      A.    A Co-Owner Who, By Agreement With The Other Co-Owner, Has Released
            Its Right To Sue Is Not A Necessary Party..............................................7
      B.    Defendants Have Failed To Show That Any Dispute Between HP And CLI
            Exists That Would Require The Involvement Of GI ...............................14
      C.    The Texas Infringement Suits Are Entitled To The Benefit Of The First-To-
            File Rule And Defendants Concede No Compelling Circumstances Justify
            Deviating From That Rule .......................................................................17
      D.    This Court Should Deny Defendants' Motion To Transfer, Which Is Nothing
            More Than An Attempt To Escape This Court's Jurisdiction And To Deny
            CLI Its Choice Of Forum.........................................................................20
            1.    The Convenience Factors.................................................................21
                  (a)    The Plaintiff's Choice Of Forum ....................................21
                  (b)    The Convenience Of The Parties And Material Witnesses .............22
                  (c)    The Place Of The Alleged Wrong ...................................23
                  (d)    The Location Of Counsel.................................................24
                  (e)    The Cost Of Obtaining The Attendance Of Witnesses And The
                         Availability Of Compulsory Process ...............................24
                  (f)    The Accessibility And Location Of Sources Of Proof ....................24
                  (g)    The Possibility Of Delay And Prejudice If Transfer Is Granted.......25
                  (h)    Possibility Of Jury View...............................................25
            2.    The Public Interest Factors ...............................................................26
                  (a)    Administrative Difficulties Caused By Court Congestion...............26
                  (b)    Local Interest In Adjudicating Local Disputes And The Burdens
                         Of Jury Duty ................................................................26
                  (c)    Conflict Of Laws.............................................................27

IV.   CONCLUSION..................................................................................................27

CHICAGO 289966v2 22768-00143

# TABLE OF AUTHORITIES

Page

## Cases

Armstrong v. Emerson Radio and Phonograph Corp.,
  179 F. Supp. 95 (S.D.N.Y. 1959)............................................................................. 17
Bowdoin v. Malone,
  287 F.2d 282 (5th Cir. 1961) ....................................................................................... 7
Catanzaro v. Intl'l Tel. and Tel. Corp.,
  378 F. Supp. 203 (D. Del. 1974)................................................................................. 9
Clements v. Holiday Inns, Inc.,
  105 F.R.D. 467 (E.D. Pa. 1984).................................................................................. 7
Continental American Corp. v. Barton,
  932 F.2d 981 (Table), 1991 WL 66046, (Fed. Cir. 1991)......................................... 16
Cummins-Allison Corp. v. Glory Ltd.,
  No. 2-03-CV-358 (TJW), 2004 U.S. Dist. LEXIS 13839, (E.D. Tex. May 26, 2004) ............ 21
Datamize, Inc. v. Fidelity Brokerage Services, LLC,
  No. 2:03-CV-321, slip op. at 4-5 (E.D. Tex. Apr. 22, 2004) ..................................... 20
Dunham v. Indianapolis & St. Louis R.R. Co.,
  8 F. Cas. 44 (N.D. Ill. 1876) ..................................................................................... 16
Dupre v. Spanier Marine Corp.,
  810 F. Supp. 823 (S.D. Tex. 1993).............................................................................. 25
Dynatech Corp. v. Frigitronics, Inc.,
  318 F. Supp. 851 (D. Conn. 1970).............................................................................. 16
English v. Seaboard Coast Line Railroad Co.,
  465 F.2d 43 (5th Cir. 1972) ........................................................................................ 8
Ethicon, Inc. v. U.S. Surgical Corp.,
  135 F.3d 1456 (Fed. Cir. 1998)......................................................................... 9, 13, 14
E-Z Bowz, L.L.C. v. Professional Prod. Research Co.,
  No. 00-Civ-8670 WL 22064257 (S.D.N.Y. Sept. 5, 2003) ......................... 10, 12, 13
Giese v. Pierce Chemical Co.,
  43 F. Supp. 2d 98 (D. Mass. 1999), ......................................................................... 16
Gulf Oil Corp. v. Gilbert,
  330 U.S. 501 (1947)..................................................................................................... 23
HS Resources, Inc. v. Wingate,
  327 F.3d 432 (5th Cir. 2003) ...................................................................................... 8
IBM v. Conner Peripherals, Inc.,
  30 U.S.P.Q.2d 1315 (N.D. Cal. 1994) ........................................................ 10, 11, 13
In re Horseshoe Entm't,
  337 F.3d 429 (5th Cir. 2003) ..................................................................................... 27
In re Triton Securities Litig.,
  70 F. Supp. 2d 678 (E.D. Tex. 1999)......................................................................... 23
Mallinckrodt Med., Inc. v. Nycomed Imaging A.S.,
  49 U.S.P.Q.2d 1474 (D. Mo. 1998) .......................................................................... 22
Michaels of Or. Co. v. Mil-Tech, Inc.,
  38 U.S.P.Q.2d 1060 (D. Or. 1995)................................................................. 10, 12, 14

ii

# TABLE OF AUTHORITIES

**Page**

*Mohamed v. Mazda Motor Corp.,*
  90 F. Supp. 2d 757 (E.D. Tex. 2000)................................................................... 24, 25
*Morgan v. Coushatta Tribe of Indians of La.,*
  214 F.R.D. 202 (E.D. Tex. 2001).............................................................................. 8
*Nelson v. Adams USA, Inc.,*
  529 U.S. 460 (2000)................................................................................................ 22
*Prima Tek II, L.L.C. v. A-Roo Co.,*
  222 F.3d 1372 (Fed. Cir. 2000)............................................................................. 16
*Provident Tradesmens Bank & Trust Co. v. Patterson,*
  390 U.S. 102 (1968).................................................................................................. 9
*Rawlings v. National Molasses Co.,*
  394 F.2d 645 (9th Cir. 1968) ........................................................................... 10, 13
*Reed v. Fina Oil and Chem. Co.,*
  995 F. Supp. 705 (E.D. Tex. 1998)........................................................................ 27
*Rhone-Pulenc Agro, S.A. v. DeKalb Genetics Corp.,*
  284 F.3d 1323 (Fed. Cir. 2002).............................................................................. 17
*Robertson v. Kiamichi R.R.,*
  42 F. Supp. 2d 651 (E.D. Tex. 1999) ..................................................................... 24
*Schexnider v. McDermott Int'l, Inc.,*
  817 F.2d 1159 (5th Cir. 1987) ............................................................................... 24
*Shering Corp. v. Roussel-UCLAF SA,*
  104 F.3d 341 (Fed. Cir. 1997)................................................................................. 9
*SMI-Owen Steel Co., Inc. v. St. Paul Fire & Marine Ins. Co.,*
  199 F.R.D. 209 (S.D. Tex. 2001)............................................................................. 8
*State Street Capital Corp. v. Dente, Inc.,*
  855 F. Supp. 192 (S.D. Tex. 1993) ........................................................................ 24
Syndia Corp. v. Lemelson,
  165 F. Supp. 2d 728 (N.D. Ill. 2001) ..................................................................... 16
*Texas Instruments v. Micron Semiconductor,*
  815 F. Supp. 994 (E.D. Tex. 1993) ........................................................................ 20
*Willingham v. Lawton,*
  555 F.2d 1340 (6th Cir. 1977) ............................................................... 10, 11, 13, 14

**Statutes**
28 U.S.C. § 1404(a) ................................................................................................. 3, 23
35 U.S.C. § 262.......................................................................................................... 9, 10

**Other Authorities**
15 Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction 2d* § 3854
  (2d ed. 1986)........................................................................................................... 29
Federal Judiciary Management Statistics, District Courts,
  available at http://www.uscourts.gov/cgi-bin/cmsd2002.pl...................................... 28

CHICAGO 289966v2 22768-00143

## I.   INTRODUCTION

Compression Labs, Inc. ("CLI") responds to Defendants'[1] motion to dismiss pursuant to Rule 12(b)(7) of the Federal Rules of Civil Procedure, or, in the alternative, to transfer. The motion should be denied in its entirety because CLI alone has the sole, exclusive, and unrestricted right and power to litigate, license, and defend the patent-in-suit[2] in the JPEG field-of-use.

Defendants' motion to dismiss is based on the single argument that CLI has failed to join an indispensable party, namely, General Instrument ("GI"). Defendants then attempt to morph their indispensable-party argument into a transfer argument by arguing that their later-filed declaratory judgment action in Delaware is the "first-filed" case because it names GI as a co-defendant with CLI. Finally, Defendants make the usual Section 1404 argument as a second basis for transfer.

The indispensable-party argument advanced by Defendants fails for two independent reasons, namely:

1.     For the purpose of ruling on a Rule 12(b)(7) motion, well-pleaded factual allegations in the complaint must be accepted as true, and thus the hundreds of pages of exhibits relied upon by Defendants in their motion are irrelevant for purposes of this motion. The arguments in Defendants' motion dissolve without the exhibits upon which they rely.

2.     Even if Defendants' exhibits are considered, Defendants have completely ignored the most recent of the series of agreements between CLI and GI regarding the '672 patent, and that agreement makes it clear beyond any doubt that GI is not an indispensable party.

The "first-to-file" argument advanced by Defendants fails for at least five reasons:  (1) the Texas suits were filed first; (2) GI is not a necessary or indispensable party, as made clear in

---

[1] All 27 defendants named in this case, except Onkyo U.S.A. Corporation, jointly filed the motion to dismiss or transfer.

[2] U.S. Patent No. 4,698,672, hereafter "the '672 Patent."

an agreement not addressed in Defendants' motion; (3) the presence of additional parties in the later-filed action is not dispositive of the first-to-file rule in any event; (4) the Texas court was the first to obtain possession of the subject of the present dispute and Defendants admit there is "identity of issues" in the Texas and Delaware actions; and (5) the second-filed action here is a declaratory judgment action filed to try to change the venue of the first-filed patent infringement action.

The Section 1404 arguments advanced by Defendants fail because this action has the requisite factual nexus to this judicial district, and the plaintiff's choice of forum is given significant weight.

## II.    BACKGROUND

This motion is just one part of an overall strategy by Defendants to deny Plaintiff its choice of forum, wrest the case away from Judge Ward, and ultimately remove this case from Texas to Delaware.

On April 22, 2004, CLI filed two lawsuits in the United States District Court for the Eastern District of Texas ("the Texas suits"). The Texas suits allege infringement of the '672 patent by two separate groups of defendants. The Texas suits were assigned case numbers 2:04-CV-158 and 2:04-CV-159 and both were initially assigned to Judge T. John Ward,[3] who subsequently recused himself from one of the cases, which was then assigned to Judge Folsom ("the Folsom case").

---

[3] Originally named defendant Adobe Systems, Inc. settled with CLI, and on June 21, 2004, CLI filed an Amended Complaint dropping Adobe as a defendant. (Ex. 1.) Consistent with CLI's exclusive right to control this litigation and to license the '672 patent in the JPEG field-of-use, the co-owner of the '672 patent, GI, was not involved in any way in the settlement with Adobe.

2

At the request of the Defendants, CLI agreed to an extension of time for Defendants to answer CLI's complaint or otherwise plead – an extension that totaled approximately 50 days, to July 6, 2004. As detailed below, instead of preparing an answer, Defendants seized upon the opportunity to construct a 234-paragraph complaint that they filed in Delaware just before their answers in Texas were due, a motion to reassign the Judge Ward case to Judge Folsom, and three separate motions to dismiss or transfer both Texas cases to their pre-selected forum in Delaware.

On May 25, 2004, Judge Ward recused himself on Civil Action No. 2:04-CV-158, retaining Civil Action No. 2:04-CV-159 (the "Ward case"). On June 29, 2004, the defendants in the Ward case ("the Ward Defendants") filed a motion to reassign that case to Judge Folsom.

The true intentions of the Defendants in both the Ward and Folsom cases were revealed on July 2, 2004 when most of them[4] filed a declaratory judgment action in Delaware ("the Delaware case"). Defendants' objective is clearly the avoidance of this district. The Delaware Plaintiffs seek a declaration by the Delaware court that the '672 patent is not infringed, is unenforceable, or is invalid. Defendants admit that there is "identity of issues" in the Texas and Delaware actions.

On July 6, 2004, the Ward Defendants filed a motion to dismiss the Ward case, based on a purported failure by CLI to join an indispensable party, General Instrument, Inc. ("GI"). On that same date, the Folsom Defendants filed a motion to dismiss the Folsom case in lieu of an answer. In that motion, the Folsom defendants also asked in the alternative that Judge Folsom transfer that case to Delaware, pursuant to 28 U.S.C. § 1404(a) and the "first-to-file" rule, citing what they called the "earlier filed" Delaware declaratory judgment action. This, despite the fact

---

[4] All but six of the defendants in the Ward and Folsom cases joined as plaintiffs in the Delaware case, *i.e.*, Concord Camera, Creative Labs, Kyocera Wireless, Onkyo, Panasonic Communications, and Panasonic Mobile Communications.

that the Delaware case was filed 71 days after CLI commenced litigation against Defendants in this district.

Both the Ward and Folsom Defendants could have addressed their alleged concern about the absence of GI by seeking to have GI joined in the Texas suits. Instead, the defendants seek dismissal or transfer of the Texas suits altogether in order to force CLI to litigate its case in a forum not of its choosing.

### A. Numerous Companies Have Recognized The Value Of The '672 Patent By Taking Licenses

The '672 patent describes and claims a compression technique used in the JPEG standard, a digital-image compression standard that was promulgated years after the '672 patent issued. Before CLI initiated the present litigation, dozens of companies had already recognized the value of the '672 patent by obtaining licenses from CLI to use the '672 invention in the JPEG field-of-use. One of the originally named defendants, Adobe Systems, Inc., has also recognized the value of the '672 patent and settled with CLI within months after CLI filed its Complaint.

### B. CLI Alone Has The Exclusive Rights To Sue And Recover For Infringement By The Accused Devices And To Control This Litigation

Defendants' entire "failure to join an indispensable party" argument is based on an incomplete set of agreements. The most recent agreement setting forth CLI's rights and interests in the '672 patent on the date the Texas suits were filed is a 2003 agreement never mentioned in Defendants' motions. That agreement is attached hereto as Exhibit 2 and clearly supports the allegations in Plaintiff's Complaint, which for purposes of Rule 12 motions must be accepted as true in any event.

4

CLI's Complaint alleges that "CLI is an owner of the '672 patent and, pursuant to an agreement with its co-owner, has the exclusive rights to sue and recover for infringement thereof with respect to the Accused Devices, as hereinafter defined." (Ex. 3, ¶ 34.) CLI's Complaint defined "Accused Devices" as "devices, at least portions of which are designed to be at least partly complaint with the JPEG standard . . . ." (*Id.* ¶ 35.) The exclusivity of CLI's rights to sue and recover for infringement was confirmed by an agreement between Forgent Networks, Inc. ("Forgent") and its wholly-owned subsidiary, CLI, and Motorola, Inc., the parent of General Instrument Corp. ("GI"), dated December 9, 2003 ("the 2003 Agreement"). Article 4 of the 2003 Agreement confirms several important exclusive rights of CLI with respect to the JPEG field-of-use. First, it confirms that CLI has the sole, exclusive and unrestricted right and power to sue third parties that use the JPEG standard and defend against any action involving JPEG. Second, if CLI sues or is sued, the 2003 Agreement confirms that CLI has the sole, exclusive, and unrestricted right and power to control such litigation involving JPEG. Finally, it confirms that CLI has the full sole, exclusive, and unrestricted right and power to license the '672 patent in the JPEG field-of-use. These and other rights are expressed in Article 4 of the 2003 Agreement relating to "Control of Litigation":

>    **Article 4 – Release of MPEG-4 rights; Control of Litigation by Grantor, etc.**
>
> <div align="center">* * *</div>
>
>    4.2    Licensee and its subsidiaries, **including GI**, hereby conveys, grants, assigns and otherwise **releases** to Grantor [Forgent and CLI] the **sole, exclusive and unrestricted right and power to enforce, by licensing, litigation or otherwise, the Jointly Owned Patents in the JPEG Standard field of use** from time to time, **and to defend any action or actions, involving such field of use**, without any accounting to or other rights of Licensee, GI or their respective subsidiaries and agree to execute such other documents as may be reasonably required from time to time by Grantor to make, in Grantor's sole judgment, the foregoing efficient and effective. Further, Licensee, on behalf of itself and on behalf of its subsidiaries, including GI, hereby agrees that **Grantor shall have the**

<div align="center">5</div>

**full sole, exclusive and unrestricted right and power to license third parties and to initiate, control and pursue to judgment or settlement** one or more actions under the Jointly Owned Patents, at Grantor's sole cost and expense, based upon the infringement thereof with respect to all fields of use, except the Broadcast Business and the MPEG-4 field of use, and the recovery or recoveries from such actions, whether by settlement or judgment, shall inure solely to the benefit of Grantor; and Licensee, GI and its subsidiaries shall have no interest in any such settlements or recoveries.

(Ex. 2,[5] at 8-9 (emphasis added).) The 2003 Agreement was executed by GI "for purposes of confirming its agreements in Article 4 hereof." (*Id.* at 21.)

## III.   ANALYSIS

Defendants' motion to dismiss is based on the false premise that GI is a necessary and indispensable party because, according to Defendants' argument, GI has the right to impede CLI's ability to sue for infringement of the '672 patent by refusing to voluntarily join in the suit. However, Defendants' motion and argument completely ignore the above-mentioned 2003 Agreement between CLI and GI regarding the '672 patent. This agreement makes it clear that GI is not a necessary or indispensible party, and that CLI alone has the full, sole, exclusive, and unrestricted right and power to sue and recover for infringement of the '672 patent in the JPEG field-of-use, as properly alleged by CLI in the complaint in this action.

### A.   Defendants' Motion to Dismiss Should Be Denied Because CLI's Well-Pleaded Allegation That It Has The Exclusive Rights To Sue And Recover For Infringement By The Accused Devices Must Be Accepted As True

Defendants' motion to dismiss should be denied for several reasons, the first of which is that CLI's well-pleaded allegation in its Complaint that it has the exclusive right to sue must be accepted as true. "For the purpose of ruling on a Rule 12(b)(7) motion, well-pleaded factual

---

[5] Because no protective order has been entered in this case yet, Exhibit 2 is a redacted version of the 2003 Agreement, whose provisions are confidential with the exception of Article 4.

allegations in the complaint are accepted as true." *Clements v. Holiday Inns, Inc.*, 105 F.R.D. 467, 469 (E.D. Pa. 1984); *see also Bowdoin v. Malone*, 287 F.2d 282, 286 (5th Cir. 1961). CLI's Complaint alleges that "CLI is an owner of the '672 patent and, pursuant to an agreement with its co-owner, has the **exclusive rights** to sue and recover for infringement thereof with respect to the Accused Devices, as hereinafter defined." (Ex. 3, ¶ 9 (emphasis added).) Accepting this allegation as true, GI cannot be even a necessary party because it has <u>no right</u> to sue or recover for infringement of the '672 patent with respect to the Accused Devices. Accordingly, the motion to dismiss should be denied on this basis alone.

Ignoring the standard for deciding a motion to dismiss, Defendants attach hundreds of pages of exhibits hoping to cast doubt on this well-pleaded allegation.[6] In their zeal to persuade this Court that CLI does not have the exclusive rights it alleges it has, Defendants either overlooked or consciously ignored, during the course of their Rule 11 investigation, the most recent agreement between CLI and GI.[7] This 2003 Agreement provides another basis for denying Defendants' motion to dismiss, as discussed next.

## A. A Co-Owner Who, By Agreement With The Other Co-Owner, Has Released Its Right To Sue Is Not A Necessary Party

Defendants' motion to dismiss is based entirely on the false premise that GI has the right to impede CLI's ability to sue infringers who practice the JPEG standard by refusing to

---

[6] One of the exhibits to Defendants' motion attaches a copy of the June 24, 1996 License and Co-Ownership Agreement between CLI and GI, which is prominently stamped "Confidential." Neither Defendants' motion nor any of the exhibits were filed under seal, and no protective order has been entered in this case. CLI hopes that this apparent disregard for the confidential information of CLI and a non-party is not an indication of how such information will be treated by Defendants in the future.

[7] Defendants' apparent casualness that led them to move to dismiss in reliance on an incomplete set of agreements, without so much as a call to CLI's counsel to verify the status of the Confidential 1996 Co-Ownership Agreement in their possession, has caused needless delay and multiplied these proceedings, and has caused CLI to expend significant resources responding to Defendants' repeated and calculated attempts to deny CLI its choice of forum.

7

voluntarily join in this lawsuit. Because GI, by agreement, released to CLI the right to sue infringers who practice the JPEG standard, GI has contracted away its right to impede CLI's prosecution of this lawsuit or to protest any adverse judgment against CLI.

Defendants must overcome two hurdles in order to prevail on their motion to dismiss. First, they must establish that GI is a necessary party under Rule 19(a) of the Federal Rules of Civil Procedure and that joinder of GI is not feasible. *Morgan v. Coushatta Tribe of Indians of La.*, 214 F.R.D. 202, 205 (E.D. Tex. 2001). If Defendants successfully surmount this threshold requirement, they must further establish that GI is "indispensable" under Rule 19(b). *Id.*; *see also HS Resources, Inc. v. Wingate*, 327 F.3d 432, 439 (5th Cir. 2003) ("if such joinder would destroy the court's jurisdiction, then the court must determine under Rule 19(b) whether to press forward without the person or to dismiss the litigation."). If, however, GI does not qualify as a necessary party under Rule 19(a), the court need not decide whether GI's absence would warrant dismissal under Rule 19(b). *English v. Seaboard Coast Line Railroad Co.*, 465 F.2d 43, 48 (5th Cir. 1972); *SMI-Owen Steel Co., Inc. v. St. Paul Fire & Marine Ins. Co.*, 199 F.R.D. 209, 212 (S.D. Tex. 2001).

Here, Defendants fall short of the first hurdle, because GI's release to CLI of all rights to sue, license, defend, and recover for infringement based on the JPEG standard disqualifies GI as a necessary party under Rule 19(a).

Defendants argue that GI is a necessary party because it is a co-owner without which this action cannot be maintained. As an initial matter, just because GI is a co-owner does not mean it is *per se* an indispensable party here. The adoption of the 1966 amendments to Rule 19 "makes inappropriate any contention that patent co-owners are *per se* indispensable parties in

8

infringement suits." *Catanzaro v. Intl'l Tel. and Tel. Corp.*, 378 F. Supp. 203, 205 (D. Del. 1974) (citing *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102 (1968)).

    The principles governing the rights of co-owners of a patent are well established. While ordinarily each co-owner has the rights to freely make, use, offer to sell, sell, and license the patented invention without the consent of any other co-owner, co-owners are free to alter or modify these rights by agreement. 35 U.S.C. § 262; *Ethicon, Inc. v. U.S. Surgical Corp.*, 135 F.3d 1456, 1468 n.9 (Fed. Cir. 1998); *Shering Corp. v. Roussel-UCLAF SA*, 104 F.3d 341, 344 (Fed. Cir. 1997) (quoting 35 U.S.C. § 262); *Willingham v. Lawton*, 555 F.2d 1340, 1345 (6th Cir. 1977) ("35 U.S.C. § 262, the only statutory section dealing with joint ownership of patents, specifically allows joint owners to change the relationship among themselves by agreement."); *IBM v. Conner Peripherals, Inc.*, 30 U.S.P.Q.2d 1315, 1319 (N.D. Cal. 1994) (attached as Ex. 4) ("Co-owners may avoid 'the inconvenience or undesirability of the joinder rule by structuring their interests so that one party is no longer in law an 'owner.'"). When they do so in a manner that bestows in one co-owner the exclusive right to sue for infringement, the absent co-owner is not an indispensable party. *Rawlings v. National Molasses Co.*, 394 F.2d 645 (9th Cir. 1968); *E-Z Bowz, L.L.C. v. Professional Prod. Research Co.*, No. 00-Civ-8670, 2003 WL 22064257 (S.D.N.Y. Sept. 5, 2003) (attached as Ex. 5); *Michaels of Or. Co. v. Mil-Tech, Inc.*, 38 U.S.P.Q.2d 1060, 1062 (D. Or. 1995) (attached as Ex. 6); *IBM*, 30 U.S.P.Q.2d at 1320 (Ex. 4). By releasing its right to sue, the absent co-owner "waive[s] protection of the two interests it had in preventing an infringement suit on its patent without its voluntary joinder in the action." *Willingham*, 555 F.2d at 1345. The two interests of a co-owner are (1) the ability to license without harassing suits by other co-owners and (2) avoiding the estoppel effect of a judgment declaring the patent invalid in which the co-owner did not participate. *Id.* at 1344.

9

GI is not a necessary party in this case because GI released to CLI the "sole, exclusive and unrestricted right and power" to enforce, by licensing, litigation or otherwise, the '672 patent in the JPEG field-of-use, and to defend any action involving such field-of-use without any accounting to or other rights of GI. (Ex. 2, Art. 4.2.) This release completely deprived GI of any right to sue anyone for infringement based on the JPEG Standard and to control or direct any aspect of this litigation in any manner. The case law is clear that such a release disqualifies the absent co-owner as a necessary or indispensable party under Rule 19.

IBM, one of the defendants sued by CLI, tried and failed to dismiss for non-joinder of a co-owner as an indispensable party in a case nearly identical to this one. In *IBM v. Conner Peripherals*, Conner was a co-owner with Alps of a patent asserted against IBM. 30 U.S.P.Q.2d 1315 (Ex. 4). The co-owners entered into a side agreement, which granted to Conner, *inter alia*, the "exclusive rights" to grant licenses, enforce and manage litigation, and receive payments. *Id.* at 1316. Thus, according to the side agreement, "Alps has no right to sue any infringers and cannot make Conner sue infringers. Alps does not have the right to sue an infringer even if Conner refuses to do so." *Id.* at 1320. Because Alps had no right to sue, the court did "not find Alps to be a necessary party because IBM does not face a substantial risk of incurring double, multiple, or otherwise inconsistent obligations." *Id.*

Likewise in *E-Z Bowz v. Professional Product Research*, Slater assigned to co-owner E-Z Bowz her "entire right, title and interest" in the patents-in-suit after litigation had commenced. 2003 WL 22064257, at *2 (Ex. 5). The court rejected the defendant's argument that all co-owners must be joined as indispensable plaintiffs, noting that since the 1966 amendments to Rule 19, "courts are less concerned with abstract characterizations of the parties and more concerned with whether the rights of the parties can be fairly adjudicated absent joinder of a patent co-

10

owner." *Id.* at *3 (quoting *Michaels*, 30 U.S.P.Q.2d at 1061). The court held that not a single requirement of Rule 19(a) was met by Slater's absence, concluding that "[n]othing in the language of Rule 19 suggests that Slater's subsequent assignment requires that she be dragooned into being part of a litigation in which she has disclaimed all interest." *Id.* at *4.

A co-owner in *Michaels v. Mil-Tech* was not an indispensable party because it had released to the other co-owner the exclusive right to sue for infringement and thus had no independent capacity to sue. 38 U.S.P.Q.2d 1060 (Ex. 6). The agreement even required the absent co-owner, Bianchi, to join voluntarily as a plaintiff, which it refused to do, but the court found this requirement irrelevant to its Rule 19 analysis. *Id.* at 1062. Like the court in *E-Z Bowz*, the court in *Michaels* found none of the requirements of Rule 19(a) satisfied, and denied the motion to dismiss for failure to join an indispensable party.

Like Alps in *IBM v. Conners*, Slater in *E-Z Bowz*, and Bianchi in *Michaels*, GI has disclaimed and released to CLI all interest in this litigation as confirmed by the 2003 Agreement between CLI and Motorola. GI cannot sue Defendants for infringement as pled in CLI's Complaint, even if CLI refused to do so, nor could GI have forced CLI to sue them. By releasing all rights to sue for infringement in the JPEG field-of-use, GI has waived protection of any interest to license in the JPEG field-of-use and to avoid the estoppel effect of any adverse judgment. *Willingham*, 555 F.2d at 1345. Because GI has no capacity to sue any of the defendants for products implementing the JPEG Standard, there is no risk that defendants will incur double, multiple, or otherwise inconsistent obligations. *See Rawlings*, 394 F.2d at 647; *E-Z Bowz*, 2003 WL 22064257, at *4; *IBM*, 30 U.S.P.Q.2d at 1320. Indeed, GI's interest in this case is even more remote than those of the absent co-owners in *IBM*, *EZ-Bowz*, and *Michaels*, in that GI has released to CLI not only its right to sue, but also its right to control any aspect of this

11

litigation. In short, GI has absolutely <u>no interest whatsoever</u> to protect in this litigation. For these reasons, GI is not a necessary party under Rule 19(a), and therefore cannot be an indispensable party under Rule 19(b).

Defendants rely on *Ethicon*, 257 F.3d 1324, to argue that even if an agreement exists whereby co-owners grant each other the unilateral right to sue, CLI cannot maintain this action without the participation of GI. This argument is flawed for two reasons. First, CLI and GI have not granted each other the unilateral right to sue in the JPEG field-of-use. Rather, as the 2003 Agreement makes clear, CLI and CLI alone has the right to sue for infringement in the JPEG field-of-use. Thus, GI does not have *any* right to sue for infringement by the Accused Devices. Second, as the court in *Michaels* explained, even if GI were to have retained a right to join in any action with CLI, which it did not, such a right would be irrelevant to whether GI is an indispensable party here. *Michaels*, 38 U.S.P.Q.2d at 1062. *Ethicon* and other cases cited by Defendants[8] are simply inapplicable here because CLI has the sole, exclusive and unrestricted right and power to sue for infringement by the Accused Devices as defined in CLI's Complaint, a situation not present in Defendants' cited cases.

Finally, Defendants erroneously rely on *Willingham v. Star Cutter*, 555 F.2d 1340, in support of their argument that GI's absence would prejudice its interests in protecting its

---

[8] *Int'l Nutrition Co. v. Horphag Research Ltd.*, 257 F.3d 1324 (Fed. Cir. 2001) (neither co-owner had exclusive right to sue for infringement); *Schering*, 104 F.3d at 342 (co-ownership agreement did not give one co-owner the exclusive right to sue); *Katz v. Lear Siegler, Inc.*, 909 F.2d 1459 (Fed. Cir. 1990) (joinder appropriate to avoid possible injury to licensee arising out of dispute between assignee and licensee concerning beneficial interests in a patent); *Willingham*, 555 F.2d 1340 (co-owners granted each other unilateral right to sue); *Cooper v. Digital Processing Sys., Inc.*, 182 F.R.D. 242 (N.D. Ohio 1998), *aff'd*, 215 F.3d 1342 (Fed. Cir. 1999) (agreement silent as to ownership of the rights to sue).

12

licensing rights and in avoiding a judgment of invalidity or unenforceability.[9]  On the contrary,

*Willingham* says precisely the opposite.  The co-owners in *Willingham* had granted each other

the "unilateral right" to sue an infringer.[10]  *Willingham*, 555 F.2d at 1345.  The court concluded:

> We interpret this clause as a waiver by both co-owners of any right to
> protect the adverse consequences that could enure [sic] to his or its detriment
> from a suit initiated by the other co-owner.  A co-owner who grants another
> owner a right to bring litigation in his "sole discretion" should not be allowed to
> argue later that such litigation should be precluded on the ground that it is
> detrimental to his interests in the patent.  **We conclude that Star, as a co-owner,
> waived protection of the two interests[11] it had in preventing an infringement
> suit on its patent without its voluntary joinder in the action.**

*Id.* (emphasis added).  Here, not only has GI released to CLI the exclusive right to sue and

defend any litigation involving JPEG and to license in the JPEG field-of-use, GI has also

released to CLI the full sole, exclusive and unrestricted right and power to <u>control</u> such litigation.

Thus, even if GI were to have any interest to protect, it has expressly waived them and

relinquished all control over protecting such interests to CLI exclusively.    Accordingly,

Defendants' own authority compels a denial of their motion to dismiss.

---

[9] Any adverse judgment of invalidity would collaterally estop relitigation of any claims found invalid.  "It is undisputed that as a result of collateral estoppel, a judgment of invalidity in one patent action renders the patent invalid in any later actions based on the same patent."  *Mycogen Plant Science, Inc. v. Monsanto Co.*, 252 F.3d 1306, 1310 (Fed. Cir. 2001), *vacated and remanded on other grounds*, 535 U.S. 1109 (2002) (citing *Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 349-50 (1971)).  Moreover, under *Blonder-Tongue*, "mutuality of estoppel or privity is not required for a third party to invoke collateral estoppel . . . with respect to a determination of patent invalidity in prior litigation." *Hartley v. Mentor Corp.*, 869 F.2d 1469, 1470-71 (Fed. Cir. 1989).  Likewise, "[t]he principle of *Blonder-Tongue Labs., Inc. v. University of Illinois Foundation*, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788, 169 USPQ 513 (1971), respecting collateral estoppel also applies to unenforceability." *General Electro Music Corp. v. Samick Music Corp.*, 19 F.3d 1405, 1413 (Fed. Cir. 1994).

[10] Because both co-owners each had the unilateral right to sue, the court concluded "under the facts of the present case" that involuntary joinder of the unwilling co-owner was proper.  *Id.* at 1346.  However, in this case, no such mutuality exists.  Here, <u>only</u> CLI has the exclusive right not only to bring this lawsuit but also to defend, control, and settle it.

[11] The two interests that are waived, the *Willingham* court explained, are the identical interests identified by Defendants in their Motion: "(1) the interest of a co-owner in being able to license third parties under his or her patent without harassing suits by other co-owners; (2) the interest of a co-owner in avoiding the estoppel effect of a judgment declaring the patent invalid in which he or she did not participate . . . ." *Willingham*, 555 F.2d at 1344.

13

**B.    Defendants Have Failed To Show That Any Dispute Between HP And CLI Exists That Would Require The Involvement Of GI**

Defendants also attempt to claim that GI is a necessary party to resolve a purported dispute between CLI and one of the Defendants, Hewlett-Packard Company ("HP"), regarding a supposed license that HP allegedly received from some unknown party. Defendants offer no proof of this purported license. Defendants do not even aver who granted this license, or when it was supposedly granted. Thus, there is nothing in the record to suggest that HP has <u>any</u> rights to the '672 patent, let alone that those rights were granted by GI, or that such rights include the right to make, use, or sell JPEG-compliant products. There is therefore no basis for concluding that a legitimate dispute exists between HP and CLI that requires the presence of GI to resolve.

Furthermore, even if GI had granted a license to HP, GI's presence would not be required because such a license could not grant to HP any right to make, use, or sell JPEG-compliant products, as GI had no such rights to begin with. As Defendants concede, under the patent statute a co-owner such as GI may give up the right to exploit its rights in a patent, including the right to grant licenses to third parties. Defs.' Mot. at 12 (citing *Schering Corp. v. Rouseel-UCLAF SA,* 104 F.3d 341, 344 (Fed. Cir. 1997)); 35 U.S.C. § 262. In this case, the agreements between CLI and GI and its predecessors clearly provide that GI gave up its rights in the JPEG field. As it is "well established ... that a joint owner of a patent cannot grant to a third party greater rights than the joint owner himself possessed," *Continental American Corp. v. Barton*, 932 F.2d 981 (Table), 1991 WL 66046, *1 (Fed. Cir. 1991) (citing *Dunham v. Indianapolis & St.*

14

*Louis R.R. Co.*, 8 F.Cas. 44 (N.D. Ill. 1876)) (attached hereto as Ex. 7),[12] GI cannot have licensed any rights in the JPEG field to HP, or any other party.

There were four agreements made between CLI and GI and its predecessors relating to the parties' rights in the '672 patent:

> (i) a License And Co-Ownership Agreement dated June 24, 1996, between CLI and Charger Industries, Inc. ("Charger"), a corporate predecessor to GI (the "1996 Agreement");
>
> (ii) an Amendment To License And Co-ownership Agreement dated July 1, 1997, between CLI and Magnitude Compression Systems, Inc. ("Magnitude"), formerly named Charger (the "1997 Agreement");
>
> (iii) an Agreement Relating To License And Co-Ownership Agreement dated January 25, 2002, between Forgent Networks, Inc. ("Forgent"), which had acquired CLI, and GI[13] (the "2002 Agreement"); and
>
> (iv) a Fully-Paid License Agreement dated December 9, 2003, between Forgent, CLI, and Motorola (the "2003 Agreement"), to which GI is also a party.[14]

In the 1996 Agreement, CLI assigned to Charger an undivided interest in several patents, including the '672 patent, that were "subject to the field-of-use restrictions set forth in Section 2.2." (Casino Decl., Att. F, p.2, ¶ 2.1.)[15] The field-of-use restrictions provided that Charger's

---

[12] Although *Barton* is an unpublished opinion, it may be cited as persuasive authority, *Giese v. Pierce Chemical Co.*, 43 F. Supp. 2d 98, 104 n.1 (D. Mass. 1999), 5th Cir. Loc. R. 47.5.4, and states a general principle of patent law in any event. *See Syndia Corp. v. Lemelson*, 165 F. Supp. 2d 728, 748-49, 753 (N.D. Ill. 2001) (where defendant had given up the right to use the patent, it could not license that right to others, even if theoretically it had the "power" to do so); *accord Prima Tek II, L.L.C. v. A-Roo Co.*, 222 F.3d 1372, 1382 (Fed. Cir. 2000); *Dynatech Corp. v. Frigitronics, Inc.*, 318 F. Supp. 851, 853 (D. Conn. 1970) ; *Armstrong v. Emerson Radio and Phonograph Corp.*, 179 F. Supp. 95, 128 (S.D. N.Y. 1959). *See also Rhone-Pulenc Agro, S.A. v. DeKalb Genetics Corp.*, 284 F.3d 1323, 1330 (Fed. Cir. 2002) (holding that there is no bona fide purchaser rule in patent licensing, and that a patent licensee can receive only those rights that were authorized to be transferred).

[13] Magnitude merged into GI and was no longer an entity around about January 16, 2001. (Casino Decl., Ex. I, p.1, ¶ 2.)

[14] Motorola acquired GI in January 2000. (Casino Decl., Att. K.)

[15] This is consistent with the Patent Assignment filed with the PTO, which indicates that the parties'' respective interests were governed by the 1996 Agreement. (Ex. 8, p. 4.) Due to a typo, the word "Marks" was used instead of "Patents."

rights under the covered patents were limited to "the broadcasting business as it has historically been conducted by CLI and as such business evolves in the future" (*id.*), which the parties reiterated in the 1997 Agreement, (Casino Dec., Att. H, p. 2, ¶ 2.1), and confirmed in the 2002 Agreement did not include the JPEG field. (Casino Decl., Att. H., pp. 1-2, ¶¶ 3, 4, 7.) CLI had the exclusive right to practice and license the covered patents, including the '672 patent, in fields, including the JPEG field, outside of Charger's broadcasting business. (Casino Decl., Att. F, p.2, ¶ 2.1, Att. H, p. 2, ¶ 2.1, Att. I, pp. ¶¶ 3, 4, 7.)[16] Thus, only CLI could grant any license under the '672 patent in the JPEG field, and any license by GI purporting to grant such rights would be ineffective and void.

Defendants concede that the 1996 Agreement prohibited GI from practicing the '672 patent in the JPEG field, but attempt to argue that GI somehow remained free to license others to use the patent in that field. As discussed above, this argument rests on a false premise, that GI could license a right which it itself did not possess.[17] It is also contrary to the understanding of the parties, for in the 2002 Agreement, GI expressly "acknowledged and confirmed" that CLI alone had the exclusive right to license the '672 patent in the JPEG field, and that neither GI nor its predecessors Charger and Magnitude have ever had any such right. (Casino Decl., Att. I, ¶¶ 3, 4, 7.) It also ignores the 1997 Agreement, in which CLI authorized GI to license the '672 patent in the MPEG-2 field (Casino Decl., Att. H, p.2, ¶ 2.2), which would have been

---

[16] This is consistent with the 2003 Agreement, which also confirms that CLI has "the sole, exclusive and unrestricted right and power to enforce, by licensing, litigation or otherwise, the Jointly Owned Patents in the JPEG Standard field of use ..." (Ex. 2, p. 8, ¶ 4.2.)

[17] *See supra,* n.12 and accompanying text. Defendants' argument regarding Section 2.2 of the 1996 Agreement is therefore misplaced, because it is in Section 2.1 of the agreement that the parties agreed to limit their right to practice the '672 patent, which in turn controls their ability to license such a right to others. Section 2.2 confirms, however, that the parties intended to limit their ability to license the '672 patent to defined fields of use (and to provide notice to potential infringers of the limit to any license that was granted).

16

unnecessary if, as Defendants claim, GI had the "unlimited" right to license the '672 patent in all fields of use all along. Defendants' strained interpretation of the parties' respective rights in the '672 patent is contradicted by the express agreements of the parties themselves regarding their rights.

In their haste to escape this district, Defendants have ignored or mischaracterized key provisions in CLI's agreements with GI in an attempt to show that GI has rights which GI itself has agreed that it does not possess. But as discussed below, even if GI were somehow deemed an indispensable party, Defendants still could not deprive this Court of jurisdiction or CLI of its choice of forum.

<div style="text-align:center">

**C.    The Texas Infringement Suits Are Entitled To The Benefit Of The First-To-File Rule And Defendants Concede No Compelling Circumstances Justify Deviating From That Rule**

</div>

Defendants argue that this Court should deny CLI its choice of forum and transfer this case to Delaware because their later-filed declaratory judgment ("DJ") action in Delaware is "the first action that includes all necessary parties." Defs.' Mot. at 19. This argument is flawed for at least five reasons: (1) the Texas cases were filed first; (2) GI is not a necessary party for the reasons explained above; (3) the presence of additional parties in the later-filed action is not dispositive of the first-to-file rule; (4) the Texas court was the first to obtain possession of the subject of the present dispute and Defendants admit there is "identity of issues" in the Texas and Delaware actions; and (5) the second-filed action here is a declaratory judgment action filed to try to change the venue of the first-filed patent infringement action. Because Defendants concede that the first-filed Texas infringement action and the later-filed Delaware DJ action are identically related and that the first-filed case should prevail, there can be no question that the earlier-filed Texas infringement action should prevail under the first-to-file rule.

<div style="text-align:center">17</div>

The parties do not dispute the law of the first-to-file rule, which was concisely summarized by this Court in *Datamize, Inc. v. Fidelity Brokerage Services, LLC*, No. 2:03-CV-321, slip op. at 4-5 (E.D. Tex. Apr. 22, 2004) (attached as Ex. 9). Defs.' Mot. at 19-20. In deciding whether to apply the first to file rule, this Court must decide two questions: (1) are the two pending actions so duplicative or do they involve such substantially similar issues that one court should decide the subject matter of both actions, and if so, (2) which of the two courts should take the case. *Texas Instruments v. Micron Semiconductor*, 815 F. Supp. 994, 997 (E.D. Tex. 1993).

Regarding the first question, Defendants concede that the Texas and Delaware cases involve issues that are more than substantially similar—they actually involve issues that are identical and based upon the same foundation. Defs.' Mot. at 17 ("The Delaware DJ Action seeks the same declaration of rights as this action.") (emphasis added); *id.* at 20 ("There is no question here that there is an identity of issues with the first-filed Delaware DJ Action since the assertion of the '672 Patent against the JPEG Standard is the foundation of both actions.") (emphasis added). CLI agrees that the Texas and Delaware cases involve issues that are identical and based on the same foundation. Therefore, the first question is clearly satisfied.

Regarding the second question, the parties disagree as to which of the two courts should take the case. "[T]he rule is that the court first seized of jurisdiction over a dispute should be permitted to adjudicate that controversy fully." *Texas Instruments*, 815 F. Supp. 997. This Court has recognized that "actions for infringement traditionally take precedence over declaratory judgment actions, even where later-filed, based on the policy that a party whose rights are being infringed should have the privilege of electing where to enforce its rights." *Cummins-Allison Corp. v. Glory Ltd.*, No. 2-03-CV-358 (TJW), 2004 U.S. Dist. LEXIS 13839, at *11 (E.D. Tex.

18

May 26, 2004) (*citing Texas Instruments*, 815 F. Supp. at 997) (attached as Ex. 10). Thus, even adding another party in one action has no bearing on which court is first seized of jurisdiction over the infringement dispute.[18] *See Schering Corp. v. Amgen, Inc.*, 969 F. Supp. 258, 267 (D. Del. 1997) ("The first-filed rule turns on which court first obtains possession of the subject of the dispute, not the parties of the dispute.") (quoting *Advanta Corp. v. Visa U.S.A., Inc.*, No. 96-7940, 1997 WL 88906, at *3 (E.D. Pa. Feb 19, 1997)). The *Schering* court found that a patent infringement action, brought by an exclusive licensee with the right to sue and recover damages, did not lose its status as the first-filed case because it failed to include the patent owner. *Id.* at 266-68. The court explained that it acquired subject matter jurisdiction over the case when it was initially filed by the patent licensee. *Id.* at 266. Therefore, the subsequently filed declaratory judgment action filed by the accused infringer in California naming both the patent licensee and the patent owner was not the first-filed case. *Id.* at 267-68.

This Court was clearly first seized of jurisdiction over CLI's actions for infringement. CLI filed its infringement cases in Texas on April 22, 2004 – more than two months before Defendants filed their DJ action in Delaware on July 2, 2004. Even if Defendants had filed their DJ action first, which they did not, the first-to-file rule would traditionally favor the infringement action. *Cummins-Allison*, 2004 U.S. Dist. LEXIS 13839, at *11; *Texas Instruments*, 815 F. Supp. at 997. Defendants' tactical maneuver naming GI in the Delaware DJ action does not

---

[18] Defendants must agree that the identity of parties does not affect the first-to-file rule because Defendants argue that their Delaware DJ action is the first-filed case despite its lack of six parties who are defendants in the initially filed Texas suits -- Concord Camera, Creative Labs, Kyocera Wireless, Onkyo, Panasonic Communications, and Panasonic Mobile Communications.

change the fact that this Court was first seized of jurisdiction over CLI's actions for infringement.[19] Therefore, the second question is clearly resolved in favor of this Court.

The only way to avoid the first-to-file rule is to show compelling circumstances. *Mann Mfg., Inc. v. Hortex, Inc.*, 439 F.2d 403, 407 (5th Cir. 1971) ("In the absence of compelling circumstances the court initially seized of the controversy should be the one to decide whether it will try the case."). But, as Defendants concede, "No such circumstances exist here." Defs.' Mot. at 20. Doomed by their own admissions about the identical issues based on the same foundation in both Texas and Delaware cases and the lack of compelling circumstances, Defendants have no choice but to cede the first-to-file rule to this Court, which was first seized of CLI's infringement claim.

> **D. This Court Should Deny Defendants' Motion To Transfer, Which Is Nothing More Than An Attempt To Escape This Court's Jurisdiction And To Deny CLI Its Choice Of Forum**

Lastly, Defendants contend that they are entitled to a transfer of this matter to the District of Delaware pursuant to 28 U.S.C. § 1404(a), under which a district court may transfer a civil action to another district court that is a more appropriate forum.[20] Transfer is warranted if: (1) the case could have been brought in the district proposed by the movant for the transfer, and (2) the "convenience of the parties and witnesses, [and] the interest of justice" favor transfer. 28

---

[19] Defendants cite *Mallinckrodt Med., Inc. v. Nycomed Imaging A.S.*, 49 U.S.P.Q.2d 1474 (D. Mo. 1998), to support their argument that their naming of GI in the Delaware DJ action entitles it to first-filed status. *Mallinckrodt*, however, is easily distinguishable because the court lacked personal jurisdiction over the sole defendant who was later dropped in favor of a defendant over which personal jurisdiction was proper. *Id.* at 1477 (distinguishing *Schering* on this basis). Also, *Nelson v. Adams USA, Inc.*, 529 U.S. 460, 467 n.1 (2000), cited by Defendants, says nothing about the applicability, if any, of the relation-back Rule 15(c) to the first-to-file rule.

[20] Concord Camera Corp. and Creative Labs, Inc. filed a separate motion to dismiss or in the alternative to transfer on July 7, 2004. The motion adopts the analysis advanced by the other defendants' motion to dismiss pursuant to Rule 12(b)(7), but declines to adopt their 1404(a) analysis. Rather the motion asserts only that if the other motion to transfer is granted, the order should include all defendants to avoid duplicative litigation.

20

U.S.C. § 1404(a). "The purpose of § 1404 is to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense . . . [the] statute is intended to place discretion in the district court to adjudicate motions for transfer of venue according to individualized, case-by-case consideration of convenience and fairness." *In re Triton Securities Litig.*, 70 F. Supp. 2d 678, 688 (E.D. Tex. 1999) (quotations omitted). In determining whether a case should be transferred under § 1404(a), the court examines two groups of factors – the convenience factors, and the public interest factors – originally set out in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947). Defendants fall far short of demonstrating that a transfer to the District of Delaware would promote convenience of the parties or witnesses or the interests of justice.

### 1.    The Convenience Factors

The convenience factors include (a) the plaintiff's choice of forum; (b) the convenience of the parties and material witnesses; (c) the place of the alleged wrong; (d) the location of counsel; (e) the cost of obtaining the attendance of witnesses and the availability of compulsory process; (f) the accessibility and location of sources of proof; and (g) the possibility of delay and prejudice if transfer is granted. *Mohamed v. Mazda Motor Corp.*, 90 F. Supp. 2d 757, 768 (E.D. Tex. 2000).

### (a)    The Plaintiff's Choice Of Forum

There is a "strong presumption in favor of the plaintiff's choice of forum that may be overcome only when the private and public interest factors clearly point towards trial in the alternate forum." *Robertson v. Kiamichi R.R.*, 42 F. Supp. 2d 651, 655 (E.D. Tex. 1999) (citing *Schexnider v. McDermott Int'l, Inc.*, 817 F.2d 1159, 1163, n.12 (5th Cir. 1987)). This strong presumption has led courts to require movants to demonstrate that the balance weighs *heavily* in favor of transfer, *State Street Capital Corp. v. Dente, Inc.*, 855 F. Supp. 192, 197 (S.D. Tex.

1993), or that the balance of convenience and justice *substantially* weighs in favor of transfer. *Mohamed*, 90 F. Supp. 2d at 768.

Defendants acknowledge that Plaintiff's choice of forum is entitled to considerable weight, but then argue that this choice carries little significance in this case. However, this Court has stated, "deference to the plaintiff's choice of forum <u>never</u> 'disappears' under <u>any</u> circumstances." *Id.* at 774 (emphasis original) Simply stated, Plaintiff's choice of forum is Marshall, Texas, and unless analysis under the remaining *Gulf Oil* factors demonstrates that "the balance is strongly in favor of the defendant," Plaintiff's choice of forum should not be disturbed. *Id.*

### (b) The Convenience Of The Parties And Material Witnesses

Courts have termed the convenience of key fact witnesses the "most important" factor. *Dupre v. Spanier Marine Corp.*, 810 F. Supp. 823, 825 (S.D. Tex. 1993). Further, the convenience of one key witness may outweigh the convenience of numerous less important witnesses. *Mohamed*, 90 F. Supp. 2d at 775 n.20. Hence, a litigant seeking transfer must specifically identify key witnesses and outline the substance of their testimony. *Id.* Tellingly, Defendants have failed to identify one single witness by name (or any other description), location and content of anticipated testimony. Because Defendants remain silent regarding a fact on which they bear the burden, this factor weighs heavily in favor of CLI.

Regarding the convenience on the parties themselves, Plaintiff CLI is a Delaware corporation with offices in Austin, Texas. Litigating this case in Delaware instead of Texas would impose huge inconvenience on CLI.

Defendants' motion recites the Defendants' locations of incorporation, as set out in the First Amended Complaint, noting that sixteen of the defendants are incorporated under the laws

22

of the state of Delaware, and none are incorporated under the laws of the State of Texas. This is factually accurate, but of *de minimus* relevance to the resolution of the motion. Defendants' principal places of business, the more relevant fact for the analysis of this issue, include eleven different states, none of which are Delaware. First Am. Compl., ¶¶ 2-29 (Ex. 1). Defendants' motion seems to take the position, without legal analysis or factual development, that it would be more convenient to litigate this dispute in the state in which some of them are incorporated, rather than the location of defendants' business enterprises. This argument makes no sense and does not fulfill the defendant's burden of establishing that transfer would promote convenience of the parties or the witnesses. A regional airport is located in Shreveport, Louisiana, just 30 minutes away from Marshall, and an international airport is just a few hours away. This factor weighs against transfer.

### (c)    The Place Of The Alleged Wrong

Defendants assert that the manufacture of the accused products does not occur in the Eastern District of Texas nor does any party have any significant offices, manufacturing facilities, or marketing personnel in here. Defs.' Mot. at 23. They then offer, curiously, that 1) "[s]ales of the accused products in the Eastern District of Texas are a result of simply placing them in the stream of commerce, rather than manufacturing or significant sales operations in the Eastern District of Texas"; 2) "[s]ale of the accused products is managed from the headquarters of each Defendant, none of which centers its operations out of the Eastern District of Texas"; and 3) "[s]ales of the accused products in the Eastern District of Texas represent only a small percentage of total sales, which occur worldwide." *Id.*

The location of the alleged wrong in a patent infringement suit encompasses the manufacture, offer for sale, sale or use of the allegedly infringing product. Defendants acknowledge that the accused products are sold in the Eastern District of Texas. This district is

23

therefore the place of the accused wrong and this factor weighs against transfer. *See Cummins-Allison Corp.*, 2004 U.S. Dist. LEXIS 13839, at *18.

<div align="center">

**(d)     The Location Of Counsel**

</div>

Location of counsel has traditionally been given little weight. *Reed v. Fina Oil and Chem. Co.*, 995 F. Supp. 705, 715 (E.D. Tex. 1998). The Fifth Circuit recently went so far as to state that location of counsel is not a relevant consideration in deciding a § 1404(a) motion. *In re Horseshoe Entm't*, 337 F.3d 429, 434 (5th Cir. 2003).

<div align="center">

**(e)     The Cost Of Obtaining The Attendance Of Witnesses And The Availability Of Compulsory Process**

</div>

Having already considered the convenience of witnesses, courts concentrate attention under this factor on availability of compulsory process. Federal Rule of Civil Procedure 45(c)(3)(A)(ii) provides that compulsory process is available to compel attendance of a witness at trial from any place within the state in which the trial is held and in locations outside the state that are not more than 100 miles from the courthouse. Defendants have failed to identify a single witness who is outside the subpoena power of this court who would be unwilling to attend without a subpoena or otherwise unavailable due to the location of the litigation. Furthermore, Defendants have admitted that the cost of attendance of a willing witness "does not appear to be a decisive factor in this case." Defs. Mot. at 26. This factor weighs against transfer.

<div align="center">

**(f)     The Accessibility And Location Of Sources Of Proof**

</div>

The accessibility and location of sources of proof has decreased in importance due to advancement in copying technology and information storage. The Court in *Mohamed* pointed out that *Gulf Oil* was decided in 1947, prior to the advent of copiers, electric typewriters, computers, email, and videotape. *Id.* at 778. Courts continue to consider this factor, but afford it only slight significance, *id.*, because documents can now be easily and cheaply copied and

<div align="center">

24

</div>

transported from their place of storage.  Again, Defendants have not identified any sources of proof that are not accessible in this district, or the production of which would be prohibitively expensive.

### (g)    The Possibility Of Delay And Prejudice If Transfer Is Granted

The possibility of delay and prejudice if transfer is granted remains an important factor that courts consider.  Judicial Caseload Profiles for United States District Courts by district and division show that the average time from filing to trial in civil actions in the Eastern District of Texas is 17 months, in contrast to the 24 month average in the District of Delaware.  *See* Ex. 11; Federal    Judiciary    Management    Statistics,    District    Courts,    available    at http://www.uscourts.gov/cgi-bin/cmsd2002.pl.  Further, in 2003, the District of Delaware had 61 open civil cases on its docket over three years old, while the Eastern District of Texas had only 41.  *Id.*  As Judge McKelvie pointed out "there is a direct correlation between how many months it takes to get the case to trial and the overall expense of the litigation, without regard to whether the case is tried on a company's home turf or three thousand miles away."  *ADE Corp. v. KLA-Trencor Corp.*, 138 F. Supp. 2d 565, 572 (D. Del. 2001).  Defendants posit no explanation concerning how a transfer to the District of Delaware, with the incumbent inevitable delays and prejudice, might serve the ends of a § 1404 transfer, and in fact this factor illuminates the Defendants' true motive of delaying and obstructing justice.  This factor weighs heavily in favor of denying the motion to transfer.

### (h)    Possibility Of Jury View

*Gulf Oil* considered the possibility of a jury view a factor to consider in venue transfer motions.  Jury views are now frowned upon and are rarely used.  *See* 15 Wright, Miller & Cooper, *Federal Practice and Procedure:  Jurisdiction 2d* § 3854 (2d ed. 1986).  There is

25

essentially zero chance that a jury in this case seated in District of Delaware will leave the Courthouse in order to view some item of evidence that a jury in the Eastern District of Texas would not see.

### 2.   The Public Interest Factors

The public interest factors from *Gulf Oil* include (a) administrative difficulties caused by court congestion; (b) the local interest in adjudicating local disputes; (c) the unfairness of burdening citizens in an unrelated forum with jury duty; and (d) the avoidance of unnecessary problems in conflict of laws. *Mohamed*, 90 F. Supp. 2d at 771.

### (a)   Administrative Difficulties Caused By Court Congestion

Court congestion profiles reflect the same data and the possibility of delay discussed above. (*See* Ex. 12.) However, the public interest inquiry is focused not on the harm that delay might visit on the litigants, but on the harm to the courts or judicial system occasioned by the choice of forum. Defendants have advanced no argument, as they cannot, that transfer of a complex, multiparty case from the Eastern District of Texas to the more congested docket in the District of Delaware advances the public interest in the efficient administration of justice.

### (b)   Local Interest In Adjudicating Local Disputes And The Burdens Of Jury Duty

Like the "locus of dispute" factor discussed above, this factor explores the location of the alleged violation of the patent laws. The citizens of the Eastern District of Texas, in whose hometowns the offending products are sold and used, have as much or more interest in enforcing the patent laws of the United States as the citizens of Delaware. This factor does not militate in favor of transfer.

26

(c)    **Conflict Of Laws**

As Defendants concede, this case involves no conflict of laws issues. *See* Defs. Mot. at 29.

In sum, Defendants have not demonstrated that a transfer to the District of Delaware would promote purposes of Section 1404 or the first-to-file rule. In spite of complaints about the Eastern District of Texas, Defendants have produced no evidence or arguments that establish that the District of Delaware is any more convenient than this court.   The proposed transfer would not conserve time, energy or money or protect litigants, witnesses and the public against unnecessary inconvenience and expense, nor would it promote fairness or justice.


IV.    **CONCLUSION**

For the reasons given above, CLI submits that Defendants' motion to dismiss or transfer should be denied.

Respectfully submitted,
Compression Labs, Inc.

Dated:  July 26, 2004                      By: Stephen Rudisill by SC by permission

Stephen G. Rudisill (*attorney-in-charge*)
        Illinois Bar No.: 2417049
        Texas Bar No.: 17376050
        srudisill@jenkens.com
John C. Gatz
        Illinois Bar  No.: 6237140
        jgatz@jenkens.com
Russell J. Genet
        Illinois Bar No.:6255982
        rgenet @jenkens.com
Justin D. Swindells
        Illinois Bar No.: 6257291
        jswindells@jenkens.com
JENKENS & GILCHRIST, P.C.
225 West Washington Street, Suite 2600

CHICAGO 289966v2 22768-00143

Chicago, Illinois  60606
Tel.    (312) 425-3900
Fax    (312) 425-3909

S. Calvin Capshaw III
        Texas Bar No.: 03783900
        ccapshaw@mailbmc.com
BROWN, McCARROLL, L.L.P.
1127 Judson Road, Suite 220
Longview, Texas  75601-5157
Tel.    (903) 236-9800
Fax.    (903) 236-8787

28

Franklin Jones, Jr.
    Texas Bar No.: 00000055
    maiezieh@millerfirm.com
JONES & JONES, Inc., P.C.
201 West Houston Street (75670)
P.O. Drawer 1249
Marshall, Texas  75670-1249
Tel.   (903) 938-4395
Fax.   (903) 938-3360

Otis Carroll
    Texas Bar No.: 03895700
Jack Wesley Hill
    Texas Bar No.: 24032294
    nancy@icklaw.com
IRELAND, CARROLL & KELLEY, P.C.
6101 South Broadway, Suite 500
Tyler, Texas  75703
Tel.   (903) 561-1600
Fax.   (903) 581-1071

Carl R. Roth
    Texas Bar No.: 17312000
    cr@rothfirm.com
Michael C. Smith
    Texas Bar No.: 18650410
    ms@rothfirm.com
THE ROTH LAW FIRM
115 North Wellington, Suite 200
P.O. Box 876
Marshall, Texas 75670
Tel.   (903) 935-1665
Fax   (903) 935-1797

ATTORNEYS FOR PLAINTIFF

29

## CERTIFICATE OF SERVICE

I hereby certify that on the 26th day of July , 2004, a true and correct copy of the foregoing document was deposited in the United States Mail, postage prepaid, and addressed to the following counsel of record:

Agfa Corporation
H. Michael Hartmann
Wesley O. Mueller
Leydig, Voit & Mayer, Ltd.
Two Prudential Plaza, Suite 4900
Chicago, Illinois 60601

Apple Computer, Incorporated
Herschel Tracy Crawford
Eric H. Findlay
Ramey & Flock
100 East Ferguson, Suite 500
Tyler, Texas 75702

George A. Riley
O'Melveny & Myers LLP
Embarcadero Center West
275 Battery Street
San Francisco, California 94111-3305

Mark C. Scarsi
Michelle L. Davidson
O'Melveny & Myers LLP
400 South Hope Street
Los Angeles, California 90071-2899

Lance Lee
Young, Pickett & Lee
4122 Texas Boulevard
Texarkana, Texas 75503

Axis Communications, Incorporated
Barry W. Graham
Elizabeth A. Niemeyer
Finnegan, Henderson, Farabow, Garrett & Dunner, L.L.P.
1300 I Street, N.W.
Washington, D.C. 20005-3315

Eric M. Albritton
Albritton Law Firm
P.O. Box 2649
Longview, Texas 75606-2649

Canon U.S.A., Incorporated
Jack O'Brien
Nicholas M. Cannella
Fitzpatrick, Cella, Harper & Scinto
300 Rockefeller Plaza
New York, New York 10112-3800

Brian Klock
Fitzpatrick, Cella, Harper & Scinto
1900 K Street NW
Washington, D.C. 20006

Jack B. Baldwin
Baldwin & Baldwin, LLP
400 West Houston Street
Marshall, Texas 75670

Concord Camera Corporation
Kerry Sisselman
400 Hollywood Boulevard
Suite 659 North
Hollywood, Florida 33021

Creative Labs, Incorporated
Attention: Legal Department
1901 McCarthy Boulevard
Milpitas, California 95035

Eastman Kodak Company
Joseph P. Lavelle
Kenneth W. Donnelly
Vivan S. Kuo
Howrey Simon Arnold & White
1299 Pennsylvania Avenue, N.W.
Washington, D.C. 20004

Nicholas H. Patton
Robert W. Schroeder, III
Patton, Tidwell & Schroeder, LLP
4605 Texas Boulevard
P.O. Box 5398
Texarkana, Texas 75505

Fuji Photo Film U.S.A.
Steven J. Routh
Hogan & Hartson LLP
555 13th Street N.W.
Washington, D.C. 20004

William C. Gooding
Gooding & Dodson
2005 Moores Lane
P.O. Box 1877
Texarkana, Texas 75504

Fujitsu Computer Products of America
Michael M. Murray
Christopher Chalsen
Milbank, Tweed, Hadley & McCloy LLP
One Chase Manhattan Plaza
New York, New York 10005-1413

Eric M. Albritton
Albritton Law Firm
P.O. Box 2649
Longview, Texas 75606

Gateway, Incorporated
W. Bryan Farney
Darryl J. Adams
Dewey Ballantine LLP
401 Congress Avenue
Suite 3200
Austin, Texas 78701-2478

Nicholas Patton
Patton, Tidwell & Schroeder, LLP
4605 Texas Boulevard
Texarkana, Texas 75505-5398

Hewlett-Packard Company
Sean C. Cunningham
Bruce Watrous
John Allcock
Gray Cary Ware & Freidenrich LLP
401 B Street, Suite 2000
San Diego, California 92101-4240

Danny L. Williams
Williams Morgan & Amerson
10333 Richmond, Suite 1100
Houston, Texas 77042

Alan Albright
Elizabeth Brown Fore
Gray Cary Ware & Freidenrich LLP
1221 South MoPac Expressway, Suite 400
Austin, Texas 78746

Nicholas H. Patton
Patton, Tidwell & Schroeder, LLP
4605 Texas Boulevard
P.O. Box 5398
Texarkana, Texas 75505-5398

Eric M. Albritton
Albritton Law Firm
P.O. Box 2649
Longview, Texas 75606

2

JASC Software
Daniel W. McDonald
Deakin T. Lauer
Merchant & Gould PC
3200 IDS Center
80 South Eighth Street
Minneapolis, Minneapolis 55402

Franklin A. Poff, Jr.
Crisp, Boyd & Poff, LLP
2301 Moores Lane
P.O. Box 6297
Texarkana, Texas 75505

JVC Americas Corporation
Morton Amster
Abraham Kasdan
Joseph Casino
Amster Rothstein & Ebenstein LLP
90 Park Avenue
New York, New York 10016

Eric M. Albritton
Albritton Law Firm
P.O. Box 2649
Longview, Texas 75606

Kyocera Wireless Corporation
Stuart Lubitz
Hogan & Hartson, LLP
Biltmore Tower
500 South Grand Avenue, Suite 1900
Los Angeles, California 90071

Jennifer P. Ainsworth
Wilson, Sheehy, Knowles, Robertson &
Cornelius, P.C.
315 East Fifth Street
P.O. Box 7339
Tyler, Texas 75701

Macromedia Incorporated
Charlene Morrow
Heather N. Mewes
Chien-Ju Alice Chen
Darryl M. Woo
Michael J. Sacksteder
Fenwick & West LLP
801 California Street
Mountain Valley, California 94041

Harry Lee Gillam, Jr.
Melissa Smith
Gillam & Smith LLP
110 South Bolivar Street
Suite 204
Marshall, Texas 75670

Matsushita Electric Corporation of America
Morton Amster
Abraham Kasdan
Joseph Casino
Amster, Rothstein & Ebenstein, LLP
90 Park Avenue
New York, New York 10016

Eric M. Albritton
Albritton Law Firm
P.O. Box 2649
Longview, Texas 75606-2649

Mitsubishi Digital Electronics America,
Incorporated
John W. Kozak
Steven P. Petersen
Leydig Voit and Mayer, Ltd.
Two Prudential Plaza
180 North Stetson, Suite 4900
Chicago, Illinois 60601

LON:139930.1
50987.1