08/24/98   MON 13:08 FAX 312881220058 84                                      ☒023

provisions applicable to the Marks, the terms of such other
agreements shall prevail.

         *          *          *          *          *          *

GICLI2A.NH
June 24, 1996

- 4 -

PATENT
REEL: 8022 FRAME: 0837

Dockets.Justia.com

IN TESTIMONY WHEREOF, the Assignor and Assignee have caused this Assignment to be signed and executed by the undersigned officers thereunto duly authorized this 24th day of June, 1996.

COMPRESSION LABS, INCORPORATED

Name: _Thomas C. Trimm._

Title: _President, CEO._

CHARGER INDUSTRIES, INC.

Name: ___Susan M. Meyer___

Title: ___Vice President___

STATE OF California )
                    ) SS.
COUNTY OF Santa Clara )

On this 24th day of June, 1996 there appeared before me Thomas C. Trimm, personally known to me, who acknowledged that he signed the foregoing Assignment as his voluntary act and deed on behalf and with full authority of Compression Labs, Incorporated

SALLY KUMBA
Comm. #1005103
NOTARY PUBLIC - CALIFORNIA
SANTA CLARA COUNTY
Comm. Expires Sept. 29, 1997

STATE OF ILLINOIS )
                  ) SS.
COUNTY OF COOK )

On this 24th day of June, 1996, there appeared before me Susan M. Meyer, personally known to me, who acknowledged that she signed the foregoing Assignment as his her voluntary act and deed on behalf and with full authority of Charger Industries, Inc.

"OFFICIAL SEAL"
Lorette M. McKnight
Notary Public, State of illinois
My Commission Expires 2/9/98

_Lorette M. McKnight_
Notary Public

GICLI2A.NH
June 24, 1996

- 5 -

06/24/96  MON 13:09 FAX 312881220058 84                                      🏿025

## SCHEDULE A

## U.S. PATENTS

| Title | Patent No. | Issue Date |
|---|---|---|
| Digital Video Compression System and Methods Utilizing Scene Adapative Coding with Rate Buffer Feedback | 4,302,775 | |
| Digital Video Compression System and Methods Utilizing Scene Adapative Coding with Rate Buffer Feedback | 4,394,774 | |
| Video Bandwidth Reduction System Employing Interframe Block Differencing and Transform Domain Coding | 4,541,012 | |
| Coding Systems for Redundancy Reduction | 4,698,672 | |
| Combined Intraframe and Interframe Transform Coding System | 4,704,628 | |

GICLI2A.NH
June 24, 1996

PATENT
REEL: 8022 FRAME: 0839

08/24/96  MON 13:09 FAX 312801220058 84                                    ☑026

## SCHEDULE B

### FOREIGN PATENTS

| Title | Country | Patent No. | Issue Date |
|---|---|---|---|
| Video Bandwidth Reduction System Employing Interframe Block Differencing and Transform Domain Coding | FRANCE<br>U.K.<br>CANADA | 0084270<br>P3271502,8<br>1209266 | |

GICLI2A.NH
June 24, 1996

PATENT
REEL: 8022 FRAME: 0840

# KIRKLAND & ELLIS

PARTNERSHIPS INCLUDING PROFESSIONAL CORPORATIONS

200 East Randolph Drive
Chicago, Illinois 60601

312 861-2000

Neil S. Hirshman
To Call Writer Direct
312 861-2493

Facsimile:
312 861-2200

July 9, 1996

**VIA EXPRESS MAIL**

Commissioner of Patents
and Trademarks
Washington, D.C. 20231
Attention: Box Assignments

> Re:    Request for Recordation of Assignment
> Our Ref. No.: 33756-0012-3

Dear Sir:

Enclosed is a Patent Assignment assigning one-half interest of the patents from Compression Labs, Incorporated (a Delaware corporation) in favor of Charger Industries, Inc. (a California corporation) dated as of June 24, 1996.

It is respectfully requested that the enclosed document be recorded on the Patent and Trademark Office assignment records for the United States patents that are identified on Schedule A.

Also enclosed are the Patent Recordation Form Cover Sheet and our check in the amount of $125.00 in payment of the required recording fee. Any additional charges should be applied to Office Deposit Account No. 22-0440.

Please forward any correspondence and the original recorded document to my attention.

Very truly yours,

Neil S. Hirshman

Enclosures

London          Los Angeles          New York    PATENT    Washington D.C.

REEL: 8022 FRAME: 0841



## EXPRESS MAIL CERTIFICATE

Express Mail No.:   TB822410072

Date of Deposit:   July 9, 1996

I hereby certify that the following documents are being deposited with the United States Postal Service as express mail under 37 CFR 1.10 on the date indicated above and is addressed to: Commissioner of Patents and Trademarks, Washington, D.C. 20231, Attention: Box Assignments.

Transmittal Letter; Recordation Form Cover Sheet for Trademarks (1 page); Patent Assignment document (assigning one-half interest) (7 pages); Check in the amount of $125.00 for filing fees; and an Express Mail Certificate for mailing (1 page).

Kara L. Bradford
(Type or printed name of person mailing paper or fee)

Kara Bradford
(Signature of person mailing paper or fee)

RECORDED: 07/10/1996

PATENT
REEL: 8022 FRAME: 0842

# EXHIBIT 9

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| DATAMIZE, INC. | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 2:03-CV-321-DF |
| | § | |
| FIDELITY BROKERAGE | § | |
| SERVICES, LLC, et al., | § | |
| | § | |
| Defendants. | § | |

## ORDER

Before the Court are Joining Defendants' Motion to Transfer (Dkt. No. 25), Datamize's Response and Sur-Reply (Dkt. Nos. 51 & 67), and Defendants' Reply (Dkt. No. 60). After having reviewed the applicable law and facts of this case, and after having conducted a hearing on this matter on March 11, 2004, for the following reasons Defendants' Motion is DENIED.

### I. BACKGROUND

This is a patent infringement case brought by Datamize, Inc., against nine Defendants. Datamize is a small, start-up company, incorporated in Wyoming with its principal place of business in Missoula, Montana. Datamize developed a software product named MyPortal™, protected by U.S. Patent Nos. 6,014,137 (the '137 patent) and 6,460,040 (the '040 patent). MyPortal allows computer users to select financial data information from both local and networked internet sources and allows users to format a portion of the information displayed on a computer screen.

Defendants are online brokerage companies that provide its customers with online trading platforms. Defendants have their principal places of business in Boston, Massachusetts, St. Louis,

Missouri, Greenwich, Connecticut, New York, New York, San Francisco, California, Austin, Texas, Plantation, Florida, and Chicago, Illinois, and are incorporated in Delaware, Arizona, Connecticut, California, Texas, Florida, and Illinois. Defendants' trading platforms allow their customers to select commercial financial information relevant to a customer's individual interests and format the display of the information on a computer screen. Defendants derive their revenue from fees charged their customers based on the number of trades customers place.

On May 17, 2002, Datamize filed suit against Plumtree Software, Inc., a non-party to the present case, for infringement of the '137 patent in the United States District Court of Montana. Plumtree is a Delaware corporation with its principal place of business in San Francisco, California. Plumtree sells software "enterprise portal" products to corporations for private use by corporate employees. Plumtree's portal products do not enable public commercial financial transactions. Plumtree derives revenue from its enterprise portals based on the number of employees that use its software for in house purposes versus commercial financial transactions.

In the Montana action, Plumtree filed a motion to dismiss for lack of personal jurisdiction or, alternatively, to transfer the case to the Northern District of California. The case was referred to Magistrate Judge Leif Erickson, who on November 23, 2002, issued a Report and Recommendation to grant Plumtree's motion to dismiss.

On December 4, 2002, subsequent to the magistrate's recommendation and before the Montana district judge ruled on Plumtree's motion to dismiss, Plumtree filed an action in the Northern District of California, requesting a declaratory judgment that it does not infringe any valid and enforceable claim of the '137 patent. On July 8, 2003, the Montana district court officially adopted Magistrate Judge Erickson's findings and dismissed Datamize's action for infringement for

lack of personal jurisdiction. Subsequently, on July 17, 2003, Datamize filed its answer in the Northern District of California action and counterclaimed for infringement of the '137 patent.

Datamize filed a motion for realignment of the parties on August 7, 2003. On October 6, 2003, District Judge Vaughn Walker granted Datamize's motion finding the court had the power to realign the parties and that it was necessary to do so. Plumtree Software, Inc., v. Datamize, LLC, No. C 02-5693 VRW, at 12 (N.D. Cal. Oct. 6, 2003) [hereafter Realignment Order].

On September 5, 2003, Datamize filed the present action against Defendants for infringement of the '040 patent. The '040 patent is a "child" of the "parent" '137 patent, i.e., the application for the '040 patent was filed in the United States Patent and Trademark Office as a continuation application before the '137 patent issued. Both patents have the same priority date of February 27, 1996, which is the original filing date of the '137 patent. The '137 patent was issued on January 11, 2000, and the '040 patent was issued on October 1, 2002.

To avoid an obviousness-type double patenting rejection issued by the Patent Office, the inventor agreed to a terminal disclaimer that provided the '040 patent with the same expiration date as the '137 patent. Both patents are enforceable for 20 years from the date of filing of the '137 patent or until February 27, 2016.

In addition to their priority and expiration dates, the '137 and '040 patents share the same inventor, specification, drawings, and prosecuting attorney. The patents, however, have different claims, claim limitations, claim scopes, and prior art citations for consideration by the Court during any claim construction, infringement, or validity determinations. The claimed inventions also involve different technologies and accused products that will involve different damages theories and calculations the Court must consider.

In response to the action filed by Plaintiffs in this Court, Defendants filed their present Motion to Transfer to the Northern District of California. The issues to be considered by this Court include whether there is "substantial overlap" between the present case and the Northern District of California action, how the "first-filed" California action affects transfer to that District, and the private and public venue factors of 28 U.S.C. § 1404(a).

## II. GENERAL RULES OF LAW

The Fifth Circuit generally follows the first-to-file rule. See West Gulf Maritime Ass'n v. ILA Deep Sea Local, 751 F.2d 721, 730 (5th Cir. 1985). "The federal courts have long recognized that the principle of comity requires federal district courts--courts of coordinate jurisdiction and equal rank--to exercise care to avoid interference with each other's affairs." Id. at 728. The general principle in the interrelation of federal district courts is to avoid duplicative litigation. Colorado River Water Conservation District v. United States, 424 U.S. 800, 817 (1976). Federal courts should try to avoid the waste of this duplication as well as rulings that may trench upon the authority of sister courts and piecemeal resolution of issues that call for a uniform result. West Gulf Maritime Ass'n, 751 F.2d at 729.

In deciding whether to apply the first-to-file rule, the Court must resolve two questions: (1) are the two pending actions so duplicative or do they involve such substantially similar issues that one court should decide the subject matter of both actions, and if so, (2) which of the two courts should take the case. Texas Instruments v. Micron Semiconductor, 815 F. Supp. 994, 997 (E.D. Tex. 1993). "Once the likelihood of substantial overlap between the two suits has been demonstrated, it is no longer up to the second-filed court to resolve the question of whether both should be allowed to proceed." Cadle Co. v. Whataburger of Alice, Inc., 174 F.3d 599, 605-06 (5th Cir. 1999) (citing

Mann Mfg., Inc., v. Hortex, Inc., 439 F.2d 403, 407 (5th Cir. 1971)). Instead, "the proper course of action [is] for the [second-filed] court to transfer the case" to the first-filed court. Id. at 606. It is then the responsibility of the first-filed court to decide "whether the second suit filed must be dismissed, stayed, or transferred and consolidated." Sutter Corp. v. P&P Indus., Inc., 125 F.3d 914, 920 (5th Cir. 1997).

28 U.S.C. § 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The purpose of section 1404 is to prevent the waste of time, energy and money and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense. In re Triton Sec. Lit., 70 F. Supp. 2d 678, 688 (E.D. Tex. 1999).

Venue is primarily an issue of convenience. Time, Inc. v. Manning, 366 F.2d 690, 696 (5th Cir. 1966). The decision to transfer rests within the discretion of the court. Peteet v. Dow Chemical Co., 868 F.2d 1428, 1436 (5th Cir. 1989). The decision to transfer venue is an "individualized, case-by-case consideration of convenience and fairness." Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988) (citation omitted). In determining whether to grant a motion to transfer under section 1404(a), a district court must balance the private convenience interests of the litigants and the public interests in the fair and efficient administration of justice. In re Triton, 70 F. Supp. 2d at 688; Robertson v. Kiamichi RR Co., 42 F. Supp. 2d 651, 655 (E.D. Tex. 1999).

III. DISCUSSION

A.    SUBSTANTIAL SIMILARITY AND FIRST-TO-FILE RULE

The primary issue in this case is whether the California action and the current action are "duplicative" or involve "substantially similar" issues so as to require application of the first-to-file

rule. In meeting this first requirement, it is enough that the "overall content of each suit is not very capable of independent development, and will be likely 'to overlap to a substantial degree.'" Superior Sav. Ass'n v. Bank of Dallas, 705 F. Supp. 326, 329 (N.D. Tex. 1989) (quoting Mann Mfg., 439 F.2d at 407, 408 n.6)). The cases need not be identical to be duplicative. Id. at 329.

The overlap in this case is not "substantial," otherwise requiring this Court to transfer the case to the Northern District of California because this case involves different defendants, different patent claims, different claim scopes, different accused products, and a different industry. The sole Defendant in the California action is Plumtree, who is not a co-Defendant in the present case. Defendants argue under Fifth Circuit law there is no requirement there be common defendants for substantial overlap to exist, citing Save Power Ltd. v. Syntek Finance Corp., 121 F.3d 947, 951 (5th Cir. 1997). Datamize, however, does not solely rely on the fact that different defendants exist in this case as did Save Power to argue insubstantial overlap.

In addition to different defendants, this case involves a different patent with different patent claims and claim scopes. When comparing the independent claims of the '137 and '040 patents, some notable differences exist. For instance, the independent claims of the '040 patent are more broad than those of the '137 patent. The independent claims of the '137 patent are more limited in scope as they include some important limitations not found in the '040 patent.

For example, Claim 1 of the '137 patent claims "a method for defining custom interface screens customized for individual kiosks . . . ." Claims 1, 14, and 30 of the '040 patent more generally claim a method for presenting customized assortments of information. Accordingly, Claim 1 of the '137 patent is directed more specifically to defining custom interface screens, while Claims 1, 14, and 30 of the '040 patent are more generally directed to presenting information.

Claim 1 of the '137 patent additionally requires a "master database of information," "at least one pre-defined window type," "pre-defined button type," "pre-defined multimedia type," and "button type," and "assigning of values" to "attributes" not included in Claims 1, 14, or 30 of the '040 patent. These additional terms further differentiate the claim scopes of the '137 and '040 patents and provide further evidence of insubstantial overlap between the two patents.

Defendants argue Datamize cannot deny the two patents claim the same invention because the inventor filed a terminal disclaimer in response to a Patent Office obviousness-type double patenting rejection of the '040 patent claims over the claims in the issued '137 patent. The United States Court of Appeals for the Federal Circuit, having jurisdiction of all patent appeals under 28 U.S.C. § 1295, has made clear that patent applicants do not admit to obviousness-type double patenting by filing a terminal disclaimer that gives up a portion of their patent term beyond the expiration date of the parent patent. Ortho Pharmaceutical Corp. v. Smith, 959 F.2d 936, 941 (Fed. Cir. 1992).

In other words, the Federal Circuit has rejected, in no uncertain terms, the argument that the claims of a continuation patent are obvious in light of its parent. The court in Ortho stated:

> In essence, Ortho seems to be contending that, by filing a terminal disclaimer in the '322 patent, the applicants admit not only that the '322 claims are an obvious variation of the '911 claims but, also, that they are an obvious variation of any claims in a third patent from which the '911 claims are themselves invalid for double patenting. However, the critical premise to this argument (i.e., by filing the terminal disclaimer, the '322 applicants admitted to obviousness-type double patenting) is wrong. The terminal disclaimer filed in '322 did no more than give up the portion of the patent term beyond the expiration date of the '911 patent. It did not concede double patenting with relation to any other patent.

Id.

Accordingly, the fact the inventor of the '040 patent filed a terminal disclaimer is not evidence the claims of the '040 patent are obvious in light of the claims of the '137 patent, nor is it evidence of substantial overlap of the claim scope of the patents. "It is a fundamental principle of patent law that two applications cannot claim the same invention, so it is not possible that the ['040] patent discloses any of the methods covered by the claims of the ['137] patent. While the ['040] and ['137] patents may be within the same field of technology, the claims which must be examined to determine their validity do not cover the same invention." Somafor Danek Holdings, Inc. v. U.S. Surgical Corp., 1998 U.S. Dist. LEXIS 21746, at *9-*10 (W.D. Tenn. 1998).

No substantial overlap additionally exists because different products in different industries are accused of infringing the claims of the '040 patent versus those of the '137 patent. In the California action, Plumtree's corporate portal products are alleged to infringe the claims of the '137 patent.

A corporate portal is software designed to aggregate and display information of large corporate entities on private corporate networks, such as a corporate intranet that can be accessed by the corporation's employees. The corporate enterprise portal software is used for in house purposes and not for commercial financial transactions. Plumtree therefore derives its revenue from the number software licenses granted to companies based on the number of employees that use the enterprise software.

Defendants in the present action are online brokerage companies that provide its customers with online trading platforms. Defendants' trading platforms allow their customers to select commercial financial information relevant to a customer's individual interests and format the display of the information on a computer screen. Defendants derive their revenue from fees charged their

customers based on the number of commercial trades customers place.

Defendants argue the nature of the accused products is irrelevant. Any differences in industries and product types are meaningless because the first step in any infringement analysis is interpretation of the claims at issue. Moreover, the Federal Circuit holds that "claim scope is determined without regard for the accused device." Young Dental Mfg. Co., Inc. v. Q3 Prods., Inc., 112 F.3d 1137, 1141 (Fed. Cir. 1997) (citing General Mills, Inc. v. Hunt-Wesson, Inc., 103 F.3d 978, 981 (Fed. Cir. 1997)).

Claim construction is but one aspect of a patent infringement case. Defendants ignore the fact that different products involve different technology and functionality, which are two of the most dominant and time consuming components of a patent case in discovery or at trial. Different products also involve different damages theories and calculations and are but a couple examples of other time intensive components of patent cases that have little relation to claim construction.

Because different products from different industries are alleged to infringe the '137 and '040 patents, different issues are presented as to technology, infringement, and damages. These differences are further evidence of insubstantial overlap with the California action. See Square D Co. v. Medar, Inc., 1994 U.S. Dist. LEXIS 20897, *8 (D. Del. 1994) (denying motion to transfer due to no substantial overlap of technology or cases involving different products); Agere Sys., Inc. v. Broadcom Corp., 2003 U.S. Dist. LEXIS 12636 (E.D. Pa. 2003) (denying motion to transfer when patents and products were different).

Defendants argue the Court should transfer this case because based on the identical specifications of the '137 and '040 patents, similar claim construction issues and infringement and invalidity contentions will exist between the actions in California and this Court. Defendants also

argue a danger exists that the two Courts may issue inconsistent claim construction rulings and cite this Court's ruling in Medtronic Ave, Inc. v. Cordis Corp., No. 2:02-CV-73 (E.D. Tex. Mar. 19, 2003) for support.

The present case, however, involves different patents with different claims and claim scopes allegedly infringed by different products in different industries. The Federal Circuit has held that where there are even small differences in the language of claims in related patents, the claim language in each patent should be construed independently. ResQnet.com, Inc. v. LANSA, Inc., 346 F.3d 1374, 1384 (Fed. Cir. 2003) (finding the differences in claim language "significant" requiring the court to interpret "the claim anew, without regard to the interpretation" of the claims of the parent patent).

Defendants further argue this case should be transferred to the Northern District of California in light of the Federal Circuit's recent ruling in Microsoft Corp. v. Multi-Tech Sys., Inc., Nos. 03-1138, 03-1139, 2004 WL 191013 (Fed. Cir. Feb. 3, 2004). The Court in Microsoft held that prosecution history estoppel applies to the claims of a parent patent based on statements made during prosecution of a child patent. Id. at *8. Accordingly, Defendants argue the prosecution history of the '040 patent will be relevant for claim construction of the claims of the '137 patent in the Northern District of California. This argument fails because the claims of the '137 patent are not at issue in the present action. Moreover, the claims of the '040 patent have different claim scopes that will require different claim interpretations and application of different prior art for claim construction, invalidity, and infringement purposes.

Accordingly, few, if any, conflicting or overlapping rulings will occur between the two actions. Moreover, "the decision of the California court in the previous action is readily available

to this court [or vice versa] for consultation" if this Court or the Northern District of California determine a particular claim term should be construed consistently. See Somafor, 1998 U.S. Dist. LEXIS 21746, at *11-*12 (denying for similar reasons motion to transfer to Central District of California and rejecting argument that grandparent/grandchild relationship between patents would create duplicative litigation).

B.     APPLICATION OF FIRST-TO-FILE RULE

With regard to application of the first-to-file rule, this Court is not inflexible in its application of the rule. Texas Instruments, 815 F. Supp. at 997. Even though the first-to-file rule normally serves to promote efficiency and should therefore not be disregarded lightly, circumstances and modern judicial reality may periodically demand a different approach. Id. at 997 (citing Church of Scientology of Cal. v. United States Dept. of the Army, 611 F.2d 738, 750 (9th Cir.1979)). To avoid the application of the first-to-file rule, the party avoiding its application must show the existence of "compelling circumstances." See Mann Mfg., 439 F.2d at 407; Igloo Prods. Corp. v. Mounties, Inc., 735 F. Supp. 214, 217 (S.D. Tex 1990).

One such exception to the first-to-file rule is when the first-filed suit is filed in anticipation of the subsequent suit. Amerada Petroleum Corp. v. Marshall, 381 F.2d 661, 663 (5th Cir. 1967). The facts indicate that Plumtree, the party to whom Defendants wish to join in the Northern District of California action, engaged in forum shopping by filing their declaratory judgment action while the Montana action was still pending.

Judge Walker in the Northern District of California expressly found that Plumtree had engaged in a blatant form of forum shopping. In his order to realign the parties, Judge Walker stated the case "does not present the usual rationale for bringing a declaratory judgment action."

Realignment Order at 8-9 (internal citations omitted). The Declaratory Judgment Act's function is to "relieve potential defendants from the Damoclean threat of impending litigation which a harassing adversary might brandish, while initiating suit at his leisure - or never." Id. (citation omitted). "Plumtree has gone to considerable lengths to deprive Datamize of its choice of forum . . . and to have [the Montana] issues tried in the Northern District of California. Accordingly, it seems equitable to allow Datamize to retain its status as plaintiff, despite the loss of its choice of forum." Id. at 11.

Transferring this case to the Northern District of California, therefore, would compound the prejudice already caused to Datamize by depriving Datamize of its choice of forum in an insubstantially similar case that involves different defendants, patent claims, claim scopes, accused products, and industry. See Villegas-Alanis v. Wurth, 2001 U.S. Dist. LEXIS 23504, at *29, *35-40 (W.D. Tex. 2001) (finding first and second-filed cases only "partially duplicative of each other" and declining to apply first-filed rule when first-filed suit was initiated in anticipation of second-filed suit).

In addition to Mann Mfg., Defendants argue various cases from this District support the proposition that second-filed actions involving child patents should be transferred to first-filed actions involving parent patents. Moreover, because parent and child patents are in the same "family" of patents, overlap of subject matter between such patents is necessarily substantial warranting transfer. In support of this argument, Defendants cite Mann Mfg., 439 F.2d at 408, Charles Hill & Assocs., Inc. v. Amazon.com, Inc., No. 2:02-CV-186-TJW (E.D. Tex. Jan. 23, 2003), Nat'l Instrument Corp. v. Software Tech., LLC, No. 2:03-CV-47-TJW (E.D. Tex. May 9, 2003), and Cal. Sec. Co-op, Inc. v. Multimedia Cablevision, Inc., 897 F. Supp. 316 (E.D. Tex. 1995). Each of

these cases involve similar parties and some of the same, if not same, patents and subject matter. These cases do not involve completely different defendants or different patent claims, claim scopes, accused products, and industry as does the present action.

Accordingly, based on the foregoing the Court finds the California action and the current action are not "duplicative" or involve "substantially similar" issues so as to require application of the first-to-file rule.

C.    PRIVATE CONVENIENCE FACTORS OF 28 U.S.C. § 1404(a)

The party seeking transfer bears the burden of showing the convenience factors favor transfer. Manning, 366 F.2d at 698; In re Triton, 70 F. Supp. 2d at 688. Moreover, the defendant seeking transfer cannot carry this burden by making unsupported assertions, but must properly establish the relevant facts. In re Triton, 70 F. Supp. 2d at 688. The private convenience factors include: "(1) the plaintiff's choice of forum; (2) the relative ease of access to the sources of proof; (3) the cost of obtaining attendance of witnesses and other trial expenses; (4) the place of the alleged wrong; and, (5) the possibility of delay and prejudice if transfer is granted." Id.

1.    Plaintiff's Choice of Forum

A plaintiff's right to choose a forum is "well-established," and his choice is usually highly esteemed. Texas Instruments, 815 F. Supp. at 996. The plaintiff's choice of a forum is "a paramount consideration in any determination of transfer request, and that choice should not be lightly disturbed." Young v. Armstrong World Indus., 601 F. Supp. 399, 401 (N.D. Tex.1984) (citing Shutte v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir. 1970)).

Further, the judicial system inherently provides a plaintiff with his choice of forum:

The existence of [forum choices] not only permits but indeed invites counsel in an

adversary system, seeking to serve in his client's interests, to select the forum that he
considers most receptive to his cause. The motive of the suitor in making this choice
is ordinarily of no moment: a court may be selected because its docket moves rapidly,
its discovery procedures are liberal, its jurors are generous, the rules of law applied
are more favorable, or the judge who presides in that forum is thought more likely
to rule in the litigant's favor.

McCuin v. Texas Power & Light Co., 714 F.2d 1255, 1261-62 (5th Cir. 1983).

Defendants argue that because the Eastern District of Texas is not Datamize's home forum,

"the usual deference accorded the plaintiff's choice is of minimal value," citing Hanby v. Shell Oil

Co., 144 F. Supp. 2d 673, 677 (E.D. Tex. 2001). In Hanby there was found to be no nexus of activity

in the Eastern District of Texas where the plaintiffs had not claimed any infringing activity in the

District. Datamize has made clear accusations against Defendants in the present action for patent

infringement in this District. The Court thus finds the plaintiff's choice of forum factor weighs in

favor of denying transfer to the Northern District of California.

      2.      Relative Ease of Access to the Sources of Proof

Defendants' argument that California is the more convenient forum because Datamize is

currently litigating in California against Plumtree does not overcome Defendants' burden. The Court

has found there is no substantial overlap between the present action and the action in the Northern

District of California. Defendants are alleged to infringe the claims of the '040 patent in this

District. Moreover, "the accessibility and location of sources of proof should weigh only slightly

in this Court's transfer analysis, particularly since these factors have been given decreasing emphasis

due to advances in copying technology and information storage." Mohamed v. Mazda Motor Corp.,

90 F. Supp. 2d 757, 778 (E.D. Tex. 2000); Brock v. Baskin-Robbins USA Co., 113 F. Supp.2d 1078,

1089 (E.D. Tex. 2000) ("As this Court has stated previously, when documents can be easily copied

and shipped to the Eastern District, the Court does not consider their present location 'an important factor in the transfer analysis.'") (citing In re Triton, 70 F. Supp. 2d at 690).

Defendants also argue they are not aware of any Datamize witnesses located in Texas; nor are Defendants aware of any defense witnesses located in the Eastern District of Texas. Because Defendants are unaware of any Datamize or defense witnesses located in Texas does not mean none exist. A generalized argument such as this does not overcome Defendants' burden.

Defendants argue the prosecuting attorney for both the '137 and '040 patents, who is one of only three witnesses listed in Datamize's Initial Disclosure Statement, resides in Northern California. The other two witnesses listed in Datamize's Initial Disclosure Statement are Datamize's co-founders who reside in Montana. Given Datamize has chosen this District to pursue the present action against Defendants and weight the Court affords plaintiffs with their choice of forum, the Court finds Datamize's witnesses would not be inconvenienced by having to travel to this Court.

Defendants further argue that considerable sources of prior art, such as prior art in the field of user interfaces and object-oriented programming, are certain to exist in the Northern District of California. This arguments dismisses the fact that the creation of user interfaces and object-oriented programming occurs throughout the United States and indeed the world. Moreover, any relevant prior art, whether from Silicon Valley or elsewhere, may easily be submitted to the Court given the convenience of modern-day mail and electronic services.

Defendant also argues that named Defendant Charles Schwab & Co., Inc., is headquartered in Northern California and several of the other Defendants, including E*TRADE, Instinet, Scottrade, Terra Nova Trading, and Fidelity Brokerages maintain significant offices in Northern California. Eight of the nine Defendants, however, are neither incorporated in, nor have their principal place of

business anywhere in California. These eight Defendants have their principal places of business in Boston, Massachusetts, St. Louis, Missouri, Greenwich, Connecticut, New York, New York, Austin, Texas, Plantation, Florida, and Chicago, Illinois, and are incorporated in Delaware, Arizona, Connecticut, Texas, Florida, and Illinois. Each of these locations are closer to the Eastern District of Texas than the Northern District of California.

The Court thus finds the relative ease of access to the sources of proof is satisfied by maintaining jurisdiction in the Eastern District of Texas.

3.    The Cost of Obtaining Attendance of Witnesses and Other Trial Expenses

Defendants do not address the cost of obtaining the attendance of witnesses or the availability of compulsory process. Defendants therefore have not met their burden for this factor.

4.    The Place of the Alleged Wrong

Defendants likewise do not address this factor. Furthermore, the alleged infringement at issue in this case takes place anywhere the Defendants' customers arguably infringe the claims of the '040 patent, including the Eastern District of Texas as asserted by Datamize.

5.    The Possibility of Delay and Prejudice if Transfer is Granted

Datamize argues it may lose its set trial date of March 29, 2005, in the Northern District of California action if the present case is transferred to that Court. Defendants, however, argue that no delay will occur if the Court were to transfer this case to the Northern District of California. Because the California action was filed before the present action, the California case has progressed to a stage further than the present action. The present action could easily be consolidated with the case in California due to the similarity of subject matter, patents, and patent claims.

The Court finds that both actions are virtually at the same stage of litigation. The Montana District Court dismissed the Montana action on July 8, 2003, the action in this Court was filed on September 5, 2003, and the Realignment Order was issued by the Northern District of California on October 6, 2003. In addition, both actions are currently scheduled for trial in March 2005. Delay is therefore not a factor that weighs in favor of transfer and Defendants have failed to meet their burden.

Defendants further argue that prejudice will occur if a transfer is not granted due to the possibility of inconsistent rulings from two federal courts on the same issues. This inconsistency may include different claim construction rulings on the same claim terms. Moreover, transfer of this case would eliminate the progression of duplicative efforts on the part of this Court and the California Court and maximize the substantial resources already invested in the California action. Under the comprehensive Northern District of California Patent Local Rules designed to streamline complex patent litigation, substantial efficiencies will be realized by consolidation with the California action.

The Court finds no prejudice will occur if the Court denies transfer. The Court has found no substantial overlap exists between the two actions as there are different defendants, patent claims, claim scopes, accused products, and industries at issue. These differences will prevent inconsistent rulings or duplicative efforts between the two Courts. Moreover, this Court is not unfamiliar with patent infringement cases. Although the Court does not use local "patent rules" as explicitly adopted by the Northern District of California, at least similar efficiencies will be realized by maintaining the present action in the current District.

Accordingly, based on the foregoing analysis the Court finds the private interest factors weigh against transfer of the current action to the Northern District of California.

B.    PUBLIC INTEREST FACTORS OF 28 U.S.C. § 1404(a)

The public interest factors include: "(1) the relative backlog and other administrative difficulties in the two jurisdictions; (2) the fairness of placing the burdens of jury duty on the citizens of the state with the greater interest in the dispute; (3) the local interest in adjudicating local disputes; and, (4) the appropriateness of having the case in a jurisdiction whose law will govern the dispute in order to avoid difficult problems in conflicts of laws." In re Triton, 70 F. Supp. 2d at 688.

1.    Administrative Difficulties

The current action and the action in the Northern District of California are at similar stages of litigation. Different issues exist between the two actions as to defendants, patent claims, claim scopes, accused products, and industries. These differences will prevent inconsistent rulings or duplicative efforts between the two Courts. Because different products from different industries are alleged to infringe the '137 and '040 patents, different issues will be presented as to technology, infringement, and damages. In addition, the Court is unaware of whether the Northern District of California has acquired any special expertise with regard to the technologies or issues in dispute.

Accordingly, no administrative difficulties exist to justify the transfer of this case to the Northern District of California.

2.    Burdens of Jury Duty, and
3.    Local Interest in Adjudicating Local Disputes

Defendants are large financial brokerage companies that enable stock trading on a nationwide basis over the internet. Defendants collectively have a strong national presence, including in the

Eastern District of Texas where Defendants' products are accused of infringing the claims of '040 patent. As such, citizens of the Eastern District of Texas have an interest in adjudicating this dispute. See In re Triton, 70 F. Supp. 2d at 691 ("The Court finds that the citizens of the Eastern District have a substantial interest in correcting any wrongdoing on the part of companies who trade stocks on a national basis.").

Moreover, Defendants have produced no evidence to support an argument there exists any greater burden on a potential jury in the Eastern District of Texas, a lesser burden on any jury in the Northern District of California, or a greater interest in the Northern District of California to try this case.

Accordingly, the Court finds the greater interest in adjudicating this dispute lies in the Eastern District of Texas.

      4.      Conflicts of Laws

The parties do not contend and the Court does not find any choice of law conflicts that would arise if this case is not transferred.

Accordingly, based on the foregoing analysis the Court finds the public interest factors weigh against transfer of this case to the Northern District of California.

## III. STAY OF PROCEEDINGS

Defendants seek a limited stay pending further order of the transferee court (or this Court if the motion to transfer is denied) so that the court handling this matter can determine the most efficient manner to proceed. The Court denied Defendants' motion for stay at the March 11, 2004, hearing on Defendants' present Motion to Transfer. The parties should continue forward with all discovery under Local Rule CV-26(a) and until the parties' case management schedule is approved

by the Court.

## IV. CONCLUSION

Based on the foregoing analysis, the Court finds that transferring this case to the Northern District of California would not serve the interests of justice because there is insufficient overlap between the actions pending in this District and the Northern District of California. Although the actions involve parent and child patents having identical specifications, drawings, and inventors, the claims of the '040 patent are substantially different from the '137 patent as they are more broad than the claims of the '137 patent and have different terms and claim scopes. As a result of these differences, different defendants, different accused products, different technologies, different prior art, different claim constructions, and different industries are involved in the present action versus the action in the Northern District of California.

Datamize has chosen this forum to litigate its claims against the Defendants and the private and public interest factors of 28 U.S.C § 1404(a) weigh against transfer of this case to the Northern District of California.

The Court therefore

ORDERS that Defendants' Motion to Transfer to the Northern District of California and motion for stay is DENIED.

Defendants' Motion for a Stay of Proceedings was DENIED at the March 11, 2004, hearing and is therefore MOOT.

Signed this 2 2 day of April 2004.

DAVID FOLSOM
UNITED STATES DISTRICT JUDGE

# EXHIBIT 10

LEXSEE 2004 US DIST. LEXIS 13839

CUMMINS-ALLISON CORP., Plaintiff v. GLORY LTD., ET AL., Defendants

CIVIL ACTION NO. 2-03-CV-358 (TJW)

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF
TEXAS, MARSHALL DIVISION

*2004 U.S. Dist. LEXIS 13839*

**May 26, 2004, Decided
May 26, 2004, Filed**

**COUNSEL:** [*1] For Cummins-Allison Corp, Plaintiff:
Samuel Franklin Baxter, Attorney at Law, Marshall, TX.
Brian N Anderson, Edward F McCormack, Gary E
Hood, Paul R Kitch, Stephen G Rudisill, Jenkens &
Gilchrist, Chicago, IL. Edward L Foote, Wilston &
Strawn, Chicago, IL.

For Glory LTD, Glory Soji Co LTD, GLory (USA) Inc,
Defendants: Sidney Calvin Capshaw, III, Brown
McCarroll, Longview, TX. Dariush G Adli, Manuel C
Nelson, Stuart Lubitz, William E. Thomson, Jr, Hogan &
Hartson LLP, Los Angeles, CA. Philippe Y. Riesen,
Hogan & Hartwon LLP, Tokyo, Japan.

**JUDGES:** T. JOHN WARD, UNITED STATES
DISTRICT JUDGE.

**OPINIONBY:** T. JOHN WARD

**OPINION:**

### ORDER

Defendants Glory, Ltd., Glory Shoji Co., Ltd., and
Glory (U.S.A.), Inc. (collectively "Glory") filed a Motion
to Transfer Venue (Docket # 7) requesting that the Court
transfer this patent infringement suit to the United States
District Court for the Northern District of Illinois,
Eastern Division, pursuant to *28 U.S.C. § § 1400 and
1404*. After considering the parties' filings and the
applicable case law, the Court **ORDERS** that the motion
be **DENIED** for the reasons expressed below.

### I. Factual Background

In this patent [*2] infringement suit the Plaintiff
accuses the Defendants of infringing three United States

patents: the '592 patent, the '354 patent, and the '067
patent. Since October 1,2002, a closely related action
involving the same parties and related patents has been
pending in the United States District Court for the
Northern District of Illinois, Eastern Division ("the
Illinois case"). In the Illinois case the Plaintiff accuses
the Defendants of infringing the '806 and '196 patents.
The '067 and '196 patents are parents of the '806 patent.
The '592 and '354 patents are continuations-in-part of the
'196 patent.

On October 10, 2003, the Plaintiff sought leave to
amend its complaint in the Illinois case to add the '592,
'354, and '067 patents to the suit. The Plaintiff informed
the judge that during discovery the Plaintiff had
identified other patents that are allegedly being infringed
by the Defendants that could not have been foreseen until
that point in time. The Plaintiff argued that the patents
are closely related and involve overlapping issues, as
well as involve the same accused infringing products. At
a hearing on the motion to amend on October 16, 2003,
the judge in the Illinois case, [*3] Judge Guzman,
refused to allow the additional patents to be added. Judge
Guzman pointed to the extensive amount of discovery
that had already been done in the case and the impending
discovery deadline as one reason for denying the motion
for leave to amend. In addition, Judge Guzman stated
that the identification of the infringement of the other
patents should result in a new cause of action as opposed
to being part of the pending Illinois case.

As a result of Judge Guzman's ruling, the Plaintiff
filed this action ("the Texas case") alleging infringement
by the Defendants of the three patents that Judge
Guzman had refused to add to the Illinois case.
Subsequent to the filing of the Texas case, the

Defendants filed a declaratory judgment action ("the second Illinois case") in the Northern District of Illinois, Eastern Division, to have the three patents asserted in the Texas case declared not infringed, invalid, and unenforceable. The second Illinois case was assigned to a different judge, Judge Conlon. Noting that Judge Guzman had refused to add the patents to the initial Illinois case and that an identical case, the Texas case, was pending in this Court, Judge Conlon entered a scheduling [*4] order and discovery order for the case to proceed and set a trial date for August of 2004. At the scheduling conference, Judge Conlon stated that the Texas case is the first-filed case and left it to this Court to decide whether the case should be transferred. Subsequent to the scheduling conference, the Defendants filed a motion in the initial Illinois case pending before Judge Guzman seeking to consolidate or reassign the second Illinois case pending before Judge Conlon with the initial Illinois case. As with the Defendants' request to add the new patents to the initial Illinois case, Judge Guzman denied the motion to consolidate noting his belief that reassigning the second Illinois case to his court would not preserve judicial economies and efficiencies.

## II. Motion to Transfer Venue

Defendants have filed a Motion to Transfer Venue requesting that the Court transfer this action to the Northern District of Illinois, Eastern Division, pursuant to *28 U.S.C. § § 1400 and 1404*. The Defendants contend that since the Illinois case involves the same parties, the same accused infringing products, and other patents closely related to the patents in this [*5] case, the initial Illinois case is the first-filed case and that this case, the second-filed case, should be transferred to Illinois. In addition, the Defendants argue that this case should be transferred to Illinois pursuant to *28 U.S.C. § 1404(a)* for the purpose of convenience and in the interest of justice.

The Plaintiff responds by arguing that this case is the first-filed case and, therefore, should not be transferred. The Plaintiff points to comments made by Judge Guzman that different patents should normally be the subject of different lawsuits and that the identification during discovery of the infringement of different patents creates a new, separate cause of action. The Plaintiff also contends that Judge Guzman's denial of the motion for leave to join the patents in the Illinois case and denial of the motion to consolidate the first Illinois case with the second Illinois case foreclose the possibility of realizing any efficiencies if this Court transfers the case to Illinois.

A. Motion to Transfer Venue to the First-Filed Court

The "first-to-file" rule is a generally recognized doctrine of federal comity which permits a district court to [*6] decline jurisdiction over an action when a complaint involving the same parties and issues has already been filed in another district. *Kerotest Mfg. Co. v. C-O-Two Fire Equipment Co., 342 U.S. 180, 96 L. Ed. 200, 72 S. Ct. 219, 1952 Dec. Comm'r Pat. 407 (1952); Texas Instruments Inc. v. Micron Semiconductor, Inc., 815 F. Supp. 994 (E.D. Tex. 1993)*. In determining whether to apply the "first-to-file" rule to an action, a court must resolve two questions: 1) are the two pending actions so duplicative or involve substantially similar issues that one court should decide the subject matter of both actions and 2) which of the two courts should take the case? *Texas Instruments Inc. v. Micron Semiconductor, Inc., 815 F. Supp. 994, 997 (ED. Tex. 1993)(citing Superior Savings Ass'n v. Bank of Dallas, 705 F. Supp. 326,328-329 (ND. Tex. 1989))*.

In order to satisfy the first inquiry, the two actions must involve closely related questions, common subject matter, or core issues that substantially overlap. *Id.* The cases need not be identical to be duplicative. *Superior Savings Association v. Bank of Dallas, 705 F. Supp. 326, 328-329 (N.D. Tex. 1989)* [*7] *(quoting Mann Mfg., Inc. v. Hortex, Inc., 439 F.2d 403, 407 (5th Cir. 1971))*. The rule with regard to the second inquiry is that in the absence of compelling circumstances the court first seized of jurisdiction over a dispute should be permitted to decide whether it will adjudicate the controversy fully. *W. Gulf Maritime Ass'n v. ILA Deep Sea Local 24, 751 F.2d 721, 729 (5th Cir. 1985); Mann Manufacturing, 439 F.2d at 407*.

However, the "first-to-file" rule is not a rigid or inflexible rule to be mechanically applied. *Mann Manufacturing, 439 F.2d at 407*. The decision of whether to apply the "first-to-file" rule is discretionary, and involves determinations concerning "[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Kerotest, 342 U.S. at 183*. Further, the "first-to-file" rule gives the *first-filed* court the responsibility to determine which case should proceed. *Texas Instruments, 815 F. Supp. at 999 (citing Pacesetter Systems, Inc. v. Medtronic, Inc., 678 F.2d 93, 96 (9th Cir. 1982))*. [*8]

### (1) Initial Illinois Case

In this case, the Defendants contend that the first-filed case is the initial Illinois case, despite the fact that the two cases involve different patents. If the Illinois case is indeed the first-filed case, then the Illinois court has the responsibility to determine which case should proceed. In the transcript of the hearing on the motion for leave and in denying the Defendant's subsequent motion to consolidate, Judge Guzman makes clear that he has

considered whether the interest in judicial administration and the conservation of judicial resources and comprehensive disposition of litigation point to having the dispute over the additional patents in the Illinois case. Judge Guzman exercised his discretion to not have the patents joined with the existing litigation and felt they should be the subject of a new cause of action. The Defendants had the chance to argue for the joining of the patents in the, Illinois case, but instead urged Judge Guzman to deny the motion for leave to amend. Further, Judge Guzman exercised his discretion not to consolidate the two Illinois actions believing that consolidation would not preserve judicial economies and [*9] efficiencies.

The Court finds that this case is the first-filed case and should proceed in this Court. Although the patents are related and might involve the interpretation of identical claim terms, the patents are different patents than those in suit in the initial Illinois case. This Court has been involved in cases where the patents and disputed claim terms have been the subject of two different suits pending at the same time. It might be that with the same parties involved and related patents the claim construction work done in the Illinois case will serve to preclude any determination by this Court that would conflict with the Illinois court's determinations. *See Omega Engineering, Inc. v. Raytek Corp., 334 F.3d 1314, 1334 (Fed. Cir. 2003)*("[W]e presume, unless otherwise compelled, that the same claim term in the same patent or related patents carries the same construed meaning."); *see also Burke, Inc. v. Bruno Independent Living Aids, Inc., 183 F.3d 1334, 1337 (Fed. Cir. 1 999)*("[T]he interest in consistency in the construction of patent claims would be ill served ... [by] preclud[ing] consideration of a prior claim construction rendered [*10] as a matter of law by this court."). At the least, it will serve as some authority for this Court to consider in making a claim construction determination. In addition, any discovery gathered from the Illinois case presumably will preclude the need for any duplicative discovery in this case. In fact, the parties agreed with Judge Conlon's conclusion that "interrogatories, depositions, and so forth, that have been taken in Judge Guzman's case to the extent they touch on the same issues or related issues" should not be duplicated. Thus, the Court finds that transferring the case to Illinois will not result in any significant efficiencies and that keeping the case in this Court will not result in any significant inefficiencies.

### (2) Second Illinois Case

On the other hand, this case and the second Illinois case involve the same patents. Therefore, the first inquiry under the "first-filed" rule is satisfied by the fact that the two actions go beyond involving closely related questions, common subject matter, and overlapping core

issues, they are basically identical. Under the second inquiry, as the first-filed court, this Court has the discretion to decide whether to hear the [*11] case. Actions for infringement traditionally take precedence over declaratory judgment actions, even where later-filed, based on the policy that a party whose rights are being infringed should have the privilege of electing where to enforce its rights. *Texas Instruments, 815 F. Supp. at 997.* Therefore, the Court finds that the case should proceed in this Court.

### B. Motion to Transfer Venue under Section 1404(a)

The Defendants also contend that the case should be transferred to Illinois pursuant to *28 U.S.C. § 1404(a)* for the convenience of the parties and in the interest of justice. *Section 1404(a)* allows a district court "[f]or the convenience of parties and witnesses, in the interest of justice" to transfer a case to any other district or division where the case might have been brought. *28 U.S.C. § 1404(a) (2003). Section 1404(a)* protects litigants, witnesses, and the public against unnecessary inconvenience and expense, and avoids wasted time, energy, and money. *Van Dusen v. Barrack, 376 U.S. 612, 616, 11 L. Ed. 2d 945, 84 S. Ct. 805 (1964).* It is within the district court's discretion to decide whether [*12] to transfer venue, and the moving party bears the burden of showing why the court should transfer the case to a different forum. *Hanby v. Shell Oil Co., 144 F. Supp. 2d 673, 676 (E.D. Tex. 2001).* Transfer is proper if the plaintiff could have brought the case initially in the proposed transferee forum and transfer would promote the convenience of the parties and the witnesses and the interests of justice. *In re Horseshoe Entertainment, 337 F.3d 429, 433 (5th Cir. 2003).* The parties do not dispute that venue is proper in the Eastern District of Texas, Marshall Division, or that this action "might have been brought" in the Northern District of Illinois, Eastern Division. Therefore, the Court turns to whether the balance of convenience and justice substantially weighs in favor of transfer.

To prevail, the litigant must demonstrate that the balance of convenience and justice substantially weighs in favor of transfer, and unless the balance of conveniences weighs heavily in the favor of the defendant, the plaintiffs choice of forum will rarely be disturbed. *See, e.g., Peteet v. Dow Chemical Co., 868 F.2d 1428, 1436 (5th Cir. 1989); Howell v. Tanner, 650 F.2d 610, 616 (5th Cir. 1981); [*13] Menendez Rodriguez v. Pan American Life Insurance Company, 311 F.2d 429, 434 (5th Cir. 1962)*(stating that "whether it be by transfer order under the statute [*1404(a)*] or by dismissal under the doctrine of forum non conveniens the plaintiffs privilege to choose, or not to be ousted from, his chosen forum is highly esteemed"); *LeDoux v. Isle of*

*Capri Casinos Inc., 218 F. Supp. 2d 835, 837 (E.D. Tex. 2002); Mohamed v. Mazda Motor Corp., 90 F. Supp. 2d 757, 771-74 (E.D. Tex. 2000); see also Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508, 91 L. Ed. 1055, 67 S. Ct. 839 (1947).* When deciding whether to transfer venue, the district court balances two types of interests: (1) the convenience of the litigants and (2) the public interests in the fair and efficient administration of justice. *Mohamed v. Mazda Motor Corp., 90 F. Supp. 2d 757, 771 (E.D. Tex. 2000)( citing International Software Sys., Inc. v. Amplicon, Inc., 77 F.3d 112, 115 (5th Cir. 1996)).*

The first type of interest, the convenience of the litigants, is comprised of the following factors: (a) plaintiffs choice of forum, (b) convenience and location [*14] of witnesses and the parties, (c) cost of obtaining the attendance of witnesses/cost of trial, (d) place of the alleged wrong, (e) accessibility and location of sources of proof, and (f) possibility of delay and prejudice if transfer is granted. *Id. at 771* (identifying the origin of the factors as *Gulf Oil Corporation v. Gilbert, 330 U.S. 501, 508, 91 L. Ed. 1055, 67 S. Ct. 839 (1947)).* The second type of interest, the public interest, is comprised of the following factors: (a) administrative difficulty, (b) localized interests in resolving localized controversies, (c) jurors, and (d) conflict of laws. *Id.*

The first factor involves the plaintiffs choice of forum. The plaintiffs decision to file suit in the Eastern District of Texas, Marshall Division, is entitled to substantial deference and "should not be lightly disturbed." *Nokia Corp. v. Buca, Inc., 2002 U.S. Dist. LEXIS 12028, 2002 WL 1461913, at *2 (N.D. Tex. 2002)(citing Nat'l Group Underwriters, Inc. v. Southern Sec. Life Ins. Co., 2001 U.S. Dist. LEXIS 18969, 2001 WL 1478800, at 2 (N.D. Tex. 2001)).* Defendants urge the Court to afford the Plaintiff's choice of forum minimal deference because neither of the parties reside in this [*15] forum and none of the significant events relevant to this action occurred in this forum. However, the admitted sale of the allegedly infringing products in the Eastern District of Texas, Marshall Division, is an event that is significant and relevant to this action. *Nokia Corp., 2002 U.S. Dist. LEXIS 12028, 2002 WL 1461913, at *2* (denying defendant's motion to transfer venue where the allegedly infringing products were sold and offered for sale in the forum's state even though the products were distributed and sold from the defendant's headquarters in another state and all of the defendant's key witnesses and documents related to the sale of the products were located at the defendant's headquarters); *Rock Bit Int'l v. Smith Int'l, 957 F. Supp. 843, 843-44 (E.D. Tex. 1 997)(granting defendant's motion to transfer venue where none of the parties resided in the forum and the plaintiff did not allege any acts of infringement occurred in the forum).* Therefore, the Plaintiffs choice

of forum maybe overturned only by a substantial showing that the other factors clearly favor transfer to an alternative forum. *Barton v. Young, 144 F. Supp. 2d 685, 688 (E.D. Tex. 2001).* [*16]

The second and third factors involve the convenience and location of witnesses and the parties and the cost of obtaining the attendance of witnesses. Here, the Plaintiff is located in Illinois and the Defendants are located in New Jersey and Japan. Although the Plaintiff will be more inconvenienced by keeping the case in Texas as opposed to Illinois, the Plaintiff's inconvenience is not a consideration. 15 Charles Alan Wright & Arthur r. Miller, *Federal Practice and Procedure* § 3849 (West 1986). The Defendants state that the design and development documentation, engineering offices, and inventors are located in Japan. The Defendants' documentation and witnesses face the burden and cost of being transported away from Japan or New Jersey regardless of whether the case is tried in Texas or Illinois. The Defendants argue that Illinois and Marshall are not equally convenient for the Defendants. However, as has been noted before, Marshall is not in the wastelands of Siberia. *Mohamed, 90 F. Supp. 2d at 776.* A regional airport is located in Shreveport, Louisiana, just 30 minutes away, and an international airport with direct flights to New Jersey and Tokyo is located [*17] in Dallas, Texas, just a couple of hours away.

Although the convenience of witnesses is the most important factor to be considered in ruling on a motion to transfer venue, it is the convenience of the non-party witnesses rather than employee witnesses that is the more important factor and is accorded greater weight. *In re Triton Ltd. Securities Litigation, 70 F. Supp. 2d 678 (E.D. Tex. 1999).* Neither party specifically mentions any key non-party witnesses and where they are located. Therefore, the convenience of the party and non-party witnesses and cost of obtaining them at trial does not weigh in favor of transfer.

The fourth factor involves the place of the alleged wrong. Generally, the preferred forum in a patent infringement action is "that which is the center of accused activity." *Beam Laser Systems, Inc. v. Cox Communications, Inc., 117 F. Supp. 2d 515, 518-519 (E.D. Va. 2000).* If there is no center of infringement activity in a particular case, as here, then, as long as the plaintiff brings its action in a forum where the alleged infringement is occurring, that choice should not be undermined by allegations that infringing activities occur [*18] throughout the country. *Id.*

The Plaintiff alleges infringing activity by the Defendants through the sale of the allegedly infringing products throughout the United States, including the

Eastern District of Texas, Marshall Division. Therefore, there are places of the alleged wrong located in the Eastern District of Texas, Marshall Division. Here, although the Defendants manufacturing of products using the allegedly infringing technology does not occur in the Eastern District of Texas, the Defendants' alleged distribution of the infringing products in the Eastern District of Texas establishes that this factor does not weigh in favor of transfer.

The fifth factor involves the accessibility and location of sources of proof This case will involve a battle of documents and experts with documents coming from both parties' information and storage facilities presumably located in Japan, Illinois, and New Jersey. Although the accessibility and location of sources of proof remain considerations in the Court's transfer analysis, they are of only slight significance due to the increasing ease of storage, communication, copying, and transportation of documents and information and this Court's [*19] mandatory disclosure obligations under Local Rule CV-26 and the additional disclosure requirements in the case's Discovery Order. *Mohamed v. Mazda Corp., 90 F. Supp. 2d 757, 778 (E.D. Tex. 2000)*. Therefore, this factor does not weigh in favor of transfer.

The sixth private interest factor and the first public interest factor involve administrative difficulties caused by court congestion and the possibility of delay and prejudice if transfer is granted. The Defendants do not dispute that these factors weigh in favor of denying the transfer due to the fact that the caseload statistics show that the Plaintiff will get to trial faster in the Eastern District of Texas. However, the Defendants point to Judge Conlon setting the second Illinois case for trial in August. As discussed above, as a result of Judge Guzman's reluctance to join the patents in the Illinois case and subsequent refusal to consolidate the first Illinois case with the second Illinois case, it does not appear that there would be any significant efficiencies if the case is transferred. In fact, as noted above, any efficiencies available from the initial Illinois case, such as discovery and claim construction, [*20] would be available in this case as well. Therefore, these factors do not weigh in favor of transfer.

The second and third public interest factors involve the localized interest in resolving localized controversies and the burdening of citizens in the forum with jury duty. The residents of the Eastern District of Texas, Marshall Division, have a significant interest in the enforcement of federal patent laws against infringement activities occurring within the division. This interest is at least as significant as the residents of the Northern District of

Illinois, Eastern Division. Therefore, these factors do not weigh in favor of transfer.

The fourth and final public interest factor involves any conflict of laws. Since this action is brought pursuant to the *Patent Act*, it will be governed by the law of the Federal Circuit applicable in both this forum and the Northern District of Illinois. Therefore, this factor does not weigh in favor of transfer.

Finally, Defendants contend that the question as to whether this Court has personal jurisdiction over the Defendants Glory Ltd. and Glory Shoji ("the Japanese defendants") weighs in favor of transfer to Illinois where the Japanese defendants [*21] have submitted to personal jurisdiction. The Japanese defendants do contest the issue of personal jurisdiction in their answer. However, the parties have not fully briefed the issue of whether the Japanese defendants are subject to personal jurisdiction in Texas. The Plaintiff's Complaint alleges that personal jurisdiction exists as to the Japanese defendants due to the fact that they conduct business in the State of Texas by directly or through intermediaries shipping, distributing, offering for sale, selling, and advertising products in the United States, State of Texas, and Eastern District of Texas. In addition, the filings indicate that the Japanese defendants manufacture the allegedly infringing products and deliver them into the stream of commerce where they eventually are sold in this state and district. The Defendants do not dispute that the allegedly infringing products are sold in the State of Texas and in the Eastern District of Texas, Marshall Division. Therefore, reading the allegations in the light most favorable to the Plaintiff at this stage, the Court finds that personal jurisdiction conceivably lies in Texas based on a stream of commerce theory and, therefore, the [*22] question as to jurisdiction does not weigh in favor of transfer.

### III Conclusion

Here, the Defendants have failed to persuade the Court that transfer to the Northern District of Illinois, Eastern Division, would be appropriate pursuant to either the first-filed rule or *§ 1404(a)*. Accordingly, the Court **ORDERS** that the Defendants' Motion to Transfer Venue be **DENIED**.

So **ORDERED** and **SIGNED** this 26th day of May, 2004.

T. JOHN WARD

UNITED STATES DISTRICT JUDGE

# EXHIBIT 11

# U.S. DISTRICT COURT - JUDICIAL CASELOAD PROFILE

| | | | 12-MONTH PERIOD ENDING SEPTEMBER 30 | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| **DELAWARE** | | | 2002 | 2001 | 2000 | 1999 | 1998 | 1997 | Numerical Standing | |
| | | | | | | | | | U.S. | Circuit |
| OVERALL CASELOAD STATISTICS | Filings* | | 2,028 | 1,004 | 1,303 | 1,033 | 898 | 870 | | |
| | Terminations | | 1,478 | 1,020 | 955 | 861 | 764 | 780 | | |
| | Pending | | 1,999 | 1,477 | 1,502 | 1,154 | 988 | 864 | | |
| | % Change in Total Filings | Over Last Year | 102.0 | | | | | | 3 | 1 |
| | | Over Earlier Years | | | 55.6 | 96.3 | 125.8 | 133.1 | 1 | 1 |
| Number of Judgeships | | | 4 | 4 | 4 | 4 | 4 | 4 | | |
| Vacant Judgeship Months** | | | 3.1 | .0 | .0 | .0 | 11.7 | 3.5 | | |
| ACTIONS PER JUDGESHIP | FILINGS | Total | 507 | 251 | 326 | 258 | 225 | 218 | 34 | 2 |
| | | Civil | 462 | 233 | 307 | 240 | 198 | 194 | 18 | 2 |
| | | Criminal Felony | 38 | 18 | 19 | 18 | 27 | 24 | 84 | 4 |
| | | Supervised Release Hearings** | 7 | - | - | - | - | - | 79 | 2 |
| | Pending Cases | | 500 | 369 | 376 | 289 | 247 | 216 | 17 | 2 |
| | Weighted Filings** | | 462 | 263 | 298 | 242 | 221 | 220 | 51 | 2 |
| | Terminations | | 370 | 255 | 239 | 215 | 191 | 195 | 69 | 4 |
| | Trials Completed | | 18 | 16 | 19 | 13 | 21 | 15 | 52 | 2 |
| MEDIAN TIMES (months) | From Filing to Disposition | Criminal Felony | 9.8 | 8.0 | 6.6 | 6.0 | 6.2 | 5.8 | 76 | 4 |
| | | Civil** | 8.2 | 12.6 | 10.9 | 11.5 | 10.5 | 11.4 | 21 | 2 |
| | From Filing to Trial** (Civil Only) | | 22.5 | 21.0 | 24.0 | 19.7 | 19.0 | 18.7 | 50 | 4 |
| OTHER | Civil Cases Over 3 Years Old** | Number | 99 | 77 | 70 | 38 | 45 | 33 | | |
| | | Percentage | 5.4 | 5.5 | 4.9 | 3.5 | 5.0 | 4.2 | 67 | 3 |
| | Average Number of Felony Defendants Filed Per Case | | 1.1 | 1.3 | 1.2 | 1.3 | 1.2 | 1.4 | | |
| | Jurors | Avg. Present for Jury Selection | 33.84 | 32.68 | 35.75 | 30.23 | 29.22 | 29.83 | | |
| | | Percent Not Selected or Challenged | 24.4 | 19.9 | 28.5 | 15.1 | 18.5 | 9.8 | | |

| 2002 CIVIL AND CRIMINAL FELONY FILINGS BY NATURE OF SUIT AND OFFENSE | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Type of | TOTAL | A | B | C | D | E | F | G | H | I | J | K | L |
| Civil | 1849 | 44 | 4 | 246 | 5 | 4 | 30 | 87 | 150 | 147 | 107 | 2 | 1023 |
| Criminal* | 150 | 6 | 4 | 60 | - | 7 | 32 | ** | 4 | 20 | 1 | 6 | 10 |

* Filings in the "Overall Caseload Statistics" section include criminal transfers, while filings "By Nature of Offense" do not.
** See "Explanation of Selected Terms."

# U.S. DISTRICT COURT - JUDICIAL CASELOAD PROFILE

| | | | 12-MONTH PERIOD ENDING SEPTEMBER 30 | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| **TEXAS EASTERN** | | | 2002 | 2001 | 2000 | 1999 | 1998 | 1997 | Numerical Standing | |
| OVERALL CASELOAD STATISTICS | Filings* | | 3,610 | 3,452 | 3,604 | 5,807 | 5,210 | 6,571 | U.S. | Circuit |
| | Terminations | | 4,458 | 4,819 | 4,568 | 5,957 | 5,440 | 4,262 | | |
| | Pending | | 2,825 | 3,706 | 5,076 | 5,975 | 6,269 | 6,303 | | |
| | % Change in Total Filings | Over Last Year | | 4.6 | | | | | 52 | 8 |
| | | Over Earlier Years | | | .2 | -37.8 | -30.7 | -45.1 | 93 | 9 |
| | Number of Judgeships | | 7 | 7 | 7 | 7 | 7 | 7 | | |
| | Vacant Judgeship Months** | | 19.4 | 10.0 | .0 | 11.8 | .0 | .0 | | |
| ACTIONS PER JUDGESHIP | FILINGS | Total | 515 | 493 | 515 | 830 | 744 | 939 | 30 | 5 |
| | | Civil | 444 | 427 | 447 | 762 | 692 | 883 | 23 | 4 |
| | | Criminal Felony | 70 | 66 | 68 | 68 | 52 | 56 | 42 | 3 |
| | | Supervised Release Hearings** | 1 | | | | | | 94 | 9 |
| | Pending Cases | | 404 | 529 | 725 | 854 | 896 | 900 | 41 | 7 |
| | Weighted Filings** | | 506 | 507 | 505 | 478 | 511 | 504 | 42 | 5 |
| | Terminations | | 637 | 688 | 653 | 851 | 777 | 609 | 10 | 3 |
| | Trials Completed | | 22 | 22 | 28 | 23 | 32 | 35 | 32 | 5 |
| MEDIAN TIMES (months) | From Filing to Disposition | Criminal Felony | 8.9 | 8.0 | 6.9 | 6.9 | 6.8 | 6.5 | 67 | 9 |
| | | Civil** | 15.0 | 30.9 | 24.3 | 5.9 | 3.9 | 9.0 | 93 | 9 |
| | From Filing to Trial** (Civil Only) | | 14.0 | 15.9 | 15.7 | 14.7 | 14.9 | 15.2 | 9 | 1 |
| OTHER | Civil Cases Over 3 Years Old** | Number | 58 | 881 | 1,878 | 508 | 462 | 83 | | |
| | | Percentage | 2.4 | 26.1 | 39.6 | 8.9 | 7.7 | 1.4 | 33 | 6 |
| | Average Number of Felony Defendants Filed Per Case | | 1.4 | 1.7 | 1.6 | 1.4 | 1.8 | 1.7 | | |
| | Jurors | Avg. Present for Jury Selection | 32.40 | 32.25 | 35.12 | 29.93 | 28.99 | 27.34 | | |
| | | Percent Not Selected or Challenged | 33.3 | 35.6 | 35.2 | 34.4 | 28.6 | 29.3 | | |

| 2002 CIVIL AND CRIMINAL FELONY FILINGS BY NATURE OF SUIT AND OFFENSE | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Type of | TOTAL | A | B | C | D | E | F | G | H | I | J | K | L |
| Civil | 3110 | 193 | 4 | 1380 | 26 | 23 | 77 | 263 | 654 | 60 | 284 | 5 | 141 |
| Criminal* | 490 | 52 | 6 | 83 | 16 | 12 | 185 | ** | 7 | 67 | 14 | 13 | 35 |

\*  Filings in the "Overall Caseload Statistics" section include criminal transfers, while filings "By Nature of Offense" do not.
\*\* See "Explanation of Selected Terms."

|  | DELAWARE | EAST TEXAS |
|---|---|---|
| **TOTAL FILINGS** | **2028** | 3610 |
| **ACTIONS PER JUDGESHIP** | 507 OF WHICH 462 ARE CIVIL | 515 OF WHICH 444 ARE CIVIL |
| **TIME IN MONTHS FROM FILING TO DISPOSITION (CIVIL)** | 8.2 | 15 |
| **TIME IN MONTHS FROM FILING TO TRIAL (CIVIL)** | 22.5 | 14 |
| **CIVIL CASES OVER 3 YEARS OLD** | 99 | 58 |
| **% OF JURORS PRESENT AT JURY SELECTION** | 33.84 | 32.4 |